## HAWKINS *v.* GENERAL MOTORS ACCEP-TANCE CORPORATION

[No. 235, September Term, 1967.]

*Decided May 29, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SINGLEY, JJ.

*John T. Bell,* with whom were *Charles W. Bell* and *Bell & Bell* on the brief, for appellant.

*J. Bowie Lillard,* for appellee.

SINGLEY, J., delivered the opinion of the Court.

On 22 May 1965, Robert E. Hawkins, the defendant below and the appellant here, purchased from Tom's Chevrolet Co., Inc., in Wheaton, Montgomery County, a 1965 Chevrolet El Camino, which, including freight, accessories, sales tax, and license tags, involved a gross cash price of $3,073.00. After the deduction of a discount of $439.25, a deposit of $83.00, and a trade-in allowance of $250.75, there remained a $2,300.00 unpaid balance of purchase price which was financed by an assignment of the contract by Tom's Chevrolet to General Motors Acceptance Corporation (GMAC). To the $2,300.00 were added: charge for insurance on life of buyer, $50.78; "official fees," $3.50; and finance charges, $348.72, thus bringing the total amount to be financed to $2,703.00, which was to be paid in 30 monthly installments of $90.10, commencing 5 July 1965.

Hawkins defaulted in his payments; GMAC repossessed the truck on 16 February 1966, at which time unpaid installments aggregated $2,092.18, net of adjustments for unearned insurance premiums and finance charges; sold the car on 10 March 1966 at public auction for $700.00; and on 16 September 1966, brought suit against Hawkins in the Circuit Court for Montgomery County for a deficiency of $1,381.95,[1] plus attorney's fees provided for by the sales contract of $207.29, or $1,589.24. With the declaration GMAC filed a motion for summary judgment. Hawkins filed a general issue plea; GMAC's motion for summary judgment was denied; the case went to trial on the merits; on 15 June 1967, judgment *nisi* was entered against

---

1. The record discloses that this figure was incorrectly arrived at. The true amount of the deficiency was $1,392.18 to which should have been added repossession costs of $12.92, or a total of $1,405.10.

Hawkins "in the amount of $1,589.24 and costs *and attorney's fees*" (emphasis added) ; on 19 June 1967, Hawkins filed a notice of appeal; and on 21 June 1967, judgment absolute was entered against Hawkins "for the sum of One Thousand Five Hundred eighty-nine and 24/100 Dollars ($1,589.24) current money with interest from June 15, 1967 and costs, *and Attorney's fees.*" (Emphasis added.) It should be noted that Hawkins appealed from the judgment *nisi* and not from the final judgment.

Maryland Rule 812 requires that an order for appeal be filed within 30 days of the date of the judgment appealed from. In *Merlands Club, Inc. v. Messall,* 238 Md. 359, 208 A. 2d 687 (1965), we held that an appeal would lie only from a judgment absolute and not from a judgment *nisi. See also,* 26 Md. L. Rev. 94 (1966). Since Hawkins' order for appeal was entered on 19 June 1967, four days after the entry of the judgment *nisi* and two days *before* the entry of the judgment absolute, GMAC could have moved to dismiss the appeal, but failed to do so. Since Rule 812 is mandatory, we have no alternative but to dismiss the appeal, Rule 835 a 2, b (3),[2] in the absence of proof of extenuating circumstances. *Compare Keystone Engineering Corp. v. Sutter,* 196 Md. 620, 626-27, 78 A. 2d 191 (1951).

Had the appeal been properly taken, however, the result reached by the lower court would not have been disturbed by us. In the lower court, and on appeal, Hawkins rested his case on two contentions: first, that Hawkins was not given notice of repossession by registered or certified mail as required by § 141 (c) of Maryland's Retail Installment Sales Act, Maryland Code (1957) Art. 83, §§ 128-53 (the Act) and that the finance charges of $348.72 exceeded the maximum of $9.00 per $100.00 per year permitted by § 132 (g) of the Act. Chapter 806 of the Laws of 1965 amended the Act in one significant respect:[3] the

---

**2.** "a 2: This Court may, on its own motion, dismiss an appeal for any cause set forth in section b of this Rule.

\* \* \*

"b (3) The order for appeal has not been filed with the lower court within the time prescribed by Rule 812."

**3.** § 143 (b) of the Act was also amended, but under our view, this is not pertinent to the question presented by the case before us.

definition of "Goods" appearing in § 152 (a), which "means all chattels personal having a cash price of two thousand dollars ($2,000) or less but not including money or things in action" was amended by substituting "five thousand dollars ($5,000)" for "two thousand dollars ($2,000)." By its terms, chapter 806 was to take effect on 1 June 1965. We have previously held that the Act, as it read prior to 1 June 1965, did not apply to sales of motor vehicles where the cash price was more than $2,000.00, except insofar as finance charges and insurance costs are concerned. *Sampson v. First Credit Corporation,* 244 Md. 317, 223 A. 2d 627 (1966) ; *Nuttall v. Baker,* 217 Md. 454, 143 A. 2d 500 (1958) ; *Auto. Accept. Corp. v. Univer. Corp.,* 216 Md. 344, 139 A. 2d 683 (1958). Since the notice to which Hawkins claims he was entitled is provided for by the Act, and not by his contract, this contention is not persuasive.[4]

With respect to the finance charges, GMAC argues, and we think correctly, that since the car was financed over a period of 30 months, the maximum finance charge permitted by § 132 of the Act would have been $529.70 rather than $348.72 actually charged by GMAC. *Falcone v. Palmer Ford, Inc.,* 242 Md. 487, 497-500, 219 A. 2d 808 (1966).

Hawkins' second contention is that the contract was induced by a fraud. He testified that it was his father and not he who desired to purchase the truck, that a salesman at Tom's Chevrolet had asked him if he

> "would be willing to go along with the contract, if after a couple of weeks, they would transfer the contract over to [his] father's name. That would be done in order to get the paper work through and then when the paper work was cleared they would transfer it over to [his] father's name and [he] would be free of any liability."

---

4. The Uniform Commercial Code (UCC), Maryland Code (1957, 1964 Replacement Volume) Art. 95 B, §§ 9-503, 9-504 controlled the repossession and sale of the truck. There was testimony that GMAC wrote to Hawkins, but Hawkins denied receiving the letter. The letter sent by GMAC to Hawkins was sufficient notice of the sale under the requirements of UCC § 9-504 (3).

The lower court failed to find in Hawkins' uncorroborated testimony a clear and satisfactory proof of fraud, and such a finding cannot be set aside on appeal unless it is clearly erroneous. Rule 886 a; *Grain Dealers Mut. Ins. Co. v. Van Buskirk,* 241 Md. 58, 70, 215 A. 2d 467 (1965).

We feel constrained to point out, however, that the judgment absolute for $1,589.24 (with interest and costs) *included* attorney's fees of $207.29 and that when attorney's fees were inadvertently added to the amount of the judgment, the fees were allowed a second time. The appellant may wish to consider the filing of an appropriate motion for a revision of the judgment to correct this mistake as permitted by Rule 625 a.[5]

> *Appeal dismissed; costs to be paid*
> *by appellant.*

---

**5.** "a. *Generally.*

For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity."