SECRETARY, MARYLAND DEPARTMENT OF HUMAN
RESOURCES ET AL. *v.* LUTHER WILSON ET AL.

[No. 88, September Term, 1979.]

*Decided December 27, 1979.*

The cause was argued before MURPHY, C. J., and DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

Submitted on previous argument (No. 21, Sept. Term, 1979) by *Carolyn I. Polowy, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Joel J. Rabin, Assistant Attorney General,* on the brief, for appellants.

*Amicus curiae* brief of International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W., *Bernard G. Link, Regional Attorney,* on the brief.

*Amicus curiae* brief of Maryland Chamber of Commerce, Inc., *J. Cookman Boyd, Jr.,* and *Rob Ross Hendrickson* on the brief.

*Amicus curiae* brief of Mayor and City Council of Baltimore, *Benjamin L. Brown, City Solicitor, William Hughes, Associate Solicitor, Glenn M. Grossman* and *William R. Phelan, Jr., Assistant City Solicitors,* on the brief.

Submitted on previous argument (No. 21, Sept. Term, 1979) by *Gordon S. Berman,* with whom was *Dennis W. Carroll* on the brief, for appellees.

DAVIDSON, J., delivered the opinion of the Court.

Maryland's Unemployment Insurance Law, Md. Code (1957, 1979 Repl. Vol.), Art. 95A, effective 10 December 1936, was designed to protect the health, morals and welfare of the citizens of Maryland by preventing economic insecurity and easing the burdens of involuntary unemployment and economic distress.[1] To accomplish this purpose, benefits are paid to individuals who have become unemployed through no fault of their own, and who are otherwise eligible.

The amount of the benefits is determined by a procedure contained in Art. 95A, § 3.

Section 3(b) (1) provides in pertinent part:

"(b) Weekly benefits. — (1) Weekly Benefit Amount. An individual's 'weekly benefit amount' shall be determined by applying the total of wages paid him for insured work in that calendar quarter of his base period[2] in which such total wages were highest to ... [a] 'schedule of benefits' set forth [in § 3(b) (1)]."

Section 3 (d) provides in pertinent part:

"(d) Duration of benefits. — Any otherwise eligible individual shall be entitled during any

---

1. Allen v. Core Target City Youth Program, 275 Md. 69, 75, 338 A.2d 237, 241 (1975); Md. Code, Art. 95A, § 2.

2. § 20(a) provides:

"'Base period' means the first four of the last five completed calendar quarters immediately preceding the commencement of the benefit year as defined in subsection (q) of this section."

§ 20(q) provides in pertinent part:

"'Benefit year' with respect to any individual, means the one-year period beginning with the first day of the first week with respect to which the individual first files a claim for benefits in accordance with this article. ..."

benefit year to a total amount of benefits equal to
twenty-six (26) times his basic weekly benefit
amount. . . ."

In order to receive benefits, claimants file an "initial claim" [3]
and each week thereafter file a "continued claim." [4]

Before 1 July 1978, the maximum weekly benefit amount
provided in § 3(b) (1) was $89 per week. Effective 1 July 1978,
§ 3(b) (1) was repealed and reenacted "for the purpose of
increasing the weekly benefits of unemployment
insurance. . . ." 1978 Md. Laws, ch. 806 at 2350. The only
change, insofar as here relevant, was to increase the
maximum weekly benefit amount to $106.

On 17 April 1978, before the amendment became effective,
the Executive Director of the Employment Security
Administration (ESA) told Mr. Gordon S. Berman, an attorney
from Legal Aid Bureau, Inc., that all claimants who filed
claims for weekly benefits after 1 July 1978 would be eligible
to receive the increased weekly benefit amount provided by
§ 3(b) (1) as amended. He indicated that not only would any
claimant who filed an initial claim after 1 July 1978 be eligible
to receive the increased weekly benefit amount provided by
§ 3(b) (1) as amended, but also that any claimant who had filed
an initial claim before 1 July 1978 but who, because his benefit
year extended beyond that date, filed continued claims for
weekly benefits after 1 July 1978, would be eligible to receive
the increased weekly benefit amount.

Appellants Wilson, Brown, Downey and Montague
(claimants) filed initial and continued claims for benefits
before 1 July 1978.[5] They were each determined to be eligible
for a maximum $89 weekly benefit amount. After 1 July 1978,
they filed continued claims, yet still were determined to be
eligible for no more than $89 a week. Claimants did not appeal
from any determination upon any continued claim made after
1 July 1978.

---

**3.** COMAR 07.04.02.01F defines an "initial claim" as "the first claim in a
new benefit year."
**4.** COMAR 07.04.02.01E defines a "continued claim" as "one of a series
of claims for benefits following either an initial or an additional claim."
**5.** Wilson's benefit year began 14 May 1978. Brown's benefit year began
11 June 1978. Downey's and Montague's benefit years began 18 June 1978.

On 7 August 1978, Mr. Berman, in a letter to the Executive Director of ESA, asked whether he had reversed his previous position that claimants whose initial claims were filed before 1 July 1978, but who filed continued claims after that date, would be eligible for the increased weekly benefit amount provided by § 3(b) (1) as amended. In a letter dated 11 August 1978, the Executive Director acknowledged that he had indeed reversed his position because his previous opinion "was counter to the legal opinion and administrative practice of preceding Executive Directors." He stated that only claimants who filed initial claims after 1 July 1978 would be eligible for the increased weekly benefit amount.

On 30 August 1978, in the Circuit Court of Baltimore City, claimants filed a bill of complaint for declaratory and injunctive relief, seeking a declaration that the ESA had unlawfully refused to pay proper weekly benefits for continued claims filed after 1 July 1978, as well as an order requiring the ESA to pay claimants any money wrongfully withheld since that date. On 9 January 1979, the trial court granted claimants' motion for summary judgment. The ESA appealed. We issued a writ of certiorari to the Court of Special Appeals before consideration by that Court.

On 7 June 1979, after oral argument, this Court dismissed the appeal because it was not taken from a final, appealable order. Md. Rule 835(a) (1). See Md. Code (1974) § 12-301 of the Courts and Judicial Proceedings Article. On 9 July 1979, the trial court issued a declaration and decree. It declared that the increased weekly benefit amount provided in § 3(b) (1) as amended was equally applicable to initial and continued claims filed after 1 July 1978. It ordered that the claimants be compensated in accordance with the increased weekly benefit amount provided in § 3(b) (1) as amended for all claims filed after 1 July 1978. Again, the ESA appealed. On 17 October 1979, we issued a writ of certiorari to the Court of Special Appeals before consideration by that Court. Because the claimants did not exhaust their administrative remedies before seeking declaratory relief from the trial court, we shall direct the trial court to dismiss.

Ordinarily, where a statutory administrative remedy is

provided, it will be deemed to be exclusive. *White v. Prince George's County,* 282 Md. 641, 649, 387 A.2d 260, 265 (1978); *Schneider v. Pullen,* 198 Md. 64, 68, 81 A.2d 226, 228 (1950). More particularly, the Uniform Declaratory Judgment Act, Md. Code (1974) § 3-409(b) of the Courts and Judicial Proceedings Article expressly provides:

> "If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

This Court has consistently held that because, under the Declaratory Judgment Act, statutory administrative remedies are exclusive, the administrative procedures established must be exhausted before a litigant may seek declaratory relief from a trial court. *Soley v. State Comm'n on Human Relations,* 277 Md. 521, 526-27, 356 A.2d 254, 257 (1976); *Tawes v. Williams,* 179 Md. 224, 228, 17 A.2d 137, 139 (1940).

In *Soley,* 277 Md. at 526, 356 A.2d at 257, this Court articulated the underlying rationale for this requirement. There, Judge Levine said for the Court:

> "The rule requiring exhaustion of administrative or statutory remedies is supported by sound reasoning. The decisions of an administrative agency are often of a discretionary nature, and frequently require an expertise which the agency can bring to bear in sifting the information presented to it. The agency should be afforded the initial opportunity to exercise that discretion and to apply that expertise. Furthermore, to permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance. Lastly, the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed."

Thus, this Court recognized that when the Legislature enacts a comprehensive remedial scheme in which a claim is to be determined by an administrative agency and reviewed in an administrative appeal before judicial review is available, it establishes, as public policy, that such a procedure produces the most efficient and effective results. In order to effectuate this public policy, trial courts generally should not act until there has been compliance with the statutory comprehensive remedial scheme. For the same reasons, an appellate court, on its own motion, ordinarily will raise the issue of exhaustion of statutory administrative remedies, even though not raised by the parties. *Maryland-Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena,* 282 Md. 588, 594, 386 A.2d 1216, 1222 (1978); *Commission on Medical Discipline v. Bendler,* 280 Md. 326, 327, 329-30, 373 A.2d 1232, 1232-34 (1977). *See* also *Eastgate Assocs. v. Apper,* 276 Md. 698, 701, 350 A.2d 661, 663 (1976); *Harford Sands, Inc. v. Levitt & Sons, Inc.,* 27 Md. App. 702, 706, 343 A.2d 544, 546 (1975). Indeed, because the parties cannot, by agreement, cause an appellate court to act contrary to public policy, such a court will consider this question even though all of the parties desire judicial intervention. *See Eastgate Assocs. v. Apper,* 276 Md. at 700, 350 A.2d at 663; *Price v. Hobbs,* 47 Md. 359, 378 (1877); *Harford Sands, Inc. v. Levitt & Sons, Inc.,* 27 Md. App. at 706, 343 A.2d at 546. Accordingly, we have, on our own motion, raised the issue of exhaustion of statutory remedies here.

Article 95A, §. 7, Claims for Benefits, provides a comprehensive remedial scheme for the orderly processing of unemployment compensation claims. Section 7(b) provides the mechanism for filing claims.[6] Section 7(c) requires an examiner to determine promptly "whether and in what amount claimant is entitled to benefits for the week with respect to which the determination is made." Section 7(c)(ii) establishes that a determination is final unless an administrative appeal is pursued. Section 7(d) requires that notice of a determination be sent to a claimant. Section 7(e) grants an initial appeal to a referee. Section 7(f) authorizes

---

6. COMAR 07.04.02.03B sets forth the procedure for filing an initial claim. COMAR 07.04.02.03D sets forth the procedure for filing continued claims.

a right of appeal from the referee's decision to the ESA's Board of Appeals (Board). Section 7(g) details the procedure that the Board is to follow. Finally, § 7(h) provides that:

> "Any party aggrieved by a decision of the Board of Appeals may secure judicial review thereof by appeal to the circuit court of the county or the Superior Court of Baltimore City, as the case may be. . . . An appeal may be taken from the decision of [those courts] to the Court of Special Appeals. . . ."

These provisions, when read together, establish that a claimant who is dissatisfied with a determination of his weekly benefit amount, made with respect to either an initial or continued claim, has a remedy, in the form of administrative appeals, which must be exhausted before judicial review can be secured.

Here, the parties agree that there should be judicial intervention. While the parties recognize that § 7 provides an administrative remedy, they agree that that remedy is not effective. They rely upon the fact that the ESA, "in keeping with [an] historic practice," established by its executive directors, has never applied statutory benefit increases to claimants who filed an initial claim before the effective date of the statute, and continued claims thereafter. They conclude that in view of the ESA's historic practice, "no remedy would have been available to these individuals without a general change in ESA's practice."

The members of the Board are appointed by the Secretary of Human Resources with the approval of the Governor. Art. 95A, § 11(a) (2); Art. 41, § 205. The Board has the responsibility for making the ultimate decisions on claims concerning weekly benefit amounts. § 7(f). In making these decisions, the Board performs quasi-judicial functions. *Maryland Bd. of Registration for Professional Eng'rs & Professional Land Surveyors v. Armacost*, 286 Md. 353, 355-56, 407 A.2d 1148, 1150-51 (1979); § 7(g). It gives notice, holds hearings, subpoenas witnesses, takes evidence and establishes a record for the purpose of ascertaining the substantial rights of the parties. § 7(g). It makes findings of

fact and draws conclusions of law. § 7 (f). Upon judicial review, courts are limited to considering questions of law decided by the Board. The Board's findings of fact, if supported by evidence, are conclusive. *Memco v. Maryland Employment Security Admin.*, 280 Md. 536, 541, 375 A.2d 1086, 1090 (1977); *Brown v. Maryland Unemployment Compensation Bd.*, 189 Md. 233, 237, 55 A.2d 696, 698 (1947); § 7 (h). There can be no question but that within the ESA, only the Board has final authority to determine the applicability of the law to facts involved in claims for weekly benefit amounts.

The Executive Director is appointed by the Secretary of Human Resources with the approval of the Governor. Art. 95A, § 11(a) (1); Art. 41, § 205. He is responsible for administering the Unemployment Insurance Law. § 12(a). He promulgates rules and regulations, employs personnel, controls expenditures, makes reports § 12 (a), and performs a myriad of other administrative functions. § 12. He does not, however, perform final quasi-judicial functions with respect to claims for weekly benefit amounts.

Here, the question sought to be resolved was whether Art. 95A, § 3(b) (1) as amended, applied to continued claims filed after 1 July 1978. This question concerns the applicability of the law to facts involved in claims for weekly benefit amounts. Only the Board, acting in its quasi-judicial capacity, has final authority to determine this question. The "historic practice" established by the Executive Director and relied upon by the parties, is not, therefore, determinative. Thus, there is nothing to show that the available administrative remedy is not effective.

The claimants failed to exhaust the effective, available statutory remedy set forth in Art. 95A, § 7 before seeking declaratory relief from the trial court. They therefore are precluded from securing judicial review. Accordingly, we shall direct the trial court to dismiss.

Generally, when a court dismisses an appeal, it will not comment on the merits of the case. Under "exceptional

circumstances," however, a court, in dicta, may express its views. *Eastgate Assocs. v. Apper,* 276 Md. at 705, 350 A.2d at 665. *See e.g., Hawkins v. General Motors Acceptance Corp.,* 250 Md. 146, 148, 242 A.2d 120, 122 (1968).

The question of the applicability of amendments which provide an increased maximum weekly benefit amount to unemployed persons involves a matter of public importance. This question has frequently arisen in the past. It is possible that because of the ESA's acknowledged, long-standing administrative practice, amendments to the statute may have been consistently misapplied. As a result, many unemployed persons may have been deprived of increased benefits to which they were entitled. Given present economic conditions, the same question is likely to recur. Under these exceptional circumstances, we deem it appropriate to express our views on the merits, as dicta.

The language of Art. 95A, § 3(b) (1) as amended, when read in context, is clear and unambiguous. The legislative intent is plain. The increased maximum weekly benefit amount, enacted for the purpose of easing the burdens of involuntary unemployment and economic distress, is applicable to all claims, including continued claims, filed on or after 1 July 1978, the effective date of the amendment.

> *Judgment of the Circuit Court of Baltimore City vacated and case remanded to that court with instructions to dismiss.*
> *Costs to be paid by appellants.*