JOSEPH H. MUNSON COMPANY, INC. *v.* SECRETARY
OF STATE OF THE STATE OF MARYLAND

[No. 42, September Term, 1981.]

*Decided August 5, 1982.*

162

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Yale L. Goldberg,* with whom was *Mark A. Winkler* on the brief, for appellant.

*James G. Klair, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The principal issue in this case is whether Maryland Code (1957, 1978 Repl. Vol.), Art. 41, § 103D, which places a limit upon the amount of expenses that a charitable organization may pay in connection with fund-raising activity, violates the First Amendment to the United States Constitution. A second issue concerns the standing of the plaintiff to raise this question.

Art. 41, § 103D, prohibits a charitable organization, in connection with any fund raising activity, from paying or agreeing to pay as expenses more than 25 percent of the gross amount raised. The statute also states that the Secretary of State shall issue rules and regulations to permit a charitable organization to pay or agree to pay as expenses more than 25 percent of the amount raised where the 25 percent limitation would "effectively prevent the charitable organization from raising contributions." [1]

Section 103D is part of a comprehensive subtitle, enacted by Ch. 679 of the Acts of 1976, for the purpose of regulating charitable organizations and charitable solicitations. *See*

---

1. Art. 41, § 103D (a) and (b), states:

"§ 103D. Limitations on amount of payments for solicitation activities.

(a) A charitable organization other than a charitable salvage organization may not pay or agree to pay as expenses in connection with any fund-raising activity a total amount in excess of 25 percent of the total gross income raised or received by reason of the fund-raising activity. The Secretary of State shall, by rule or regulation in accordance with the "standard of accounting and fiscal reporting for voluntary health and welfare organizations" provide for the reporting of actual cost, and of allocation of expenses, of a charitable organization into those which are in connection with a fund-raising activity and those which are not. The Secretary of State shall issue rules and regulations to permit a charitable organization to pay or agree to pay for expenses in connection with a fund-raising activity more than 25% of its total gross income in those instances where the 25% limitation would effectively prevent the charitable organization from raising contributions.

"The 25% limitation in this subsection shall not apply to compensation or expenses paid by a charitable organization to a professional fund-raiser counsel for conducting feasibility studies for the purpose of determining whether or not the charitable organization should undertake a fund-raising activity, such compensation or expenses paid for feasibility studies or preliminary planning not being considered to be expenses paid in connection with a fund-raising activity.

"(b) For purposes of this section, the total gross income raised or received shall be adjusted so as not to include contributions received equal to the actual cost to the charitable organization of (1) goods, food, entertainment, or drink sold or provided to the public, nor should these costs be included as fund-raising costs; (2) the actual postage paid to the United States Postal Service and printing expense in connection with the soliciting of contributions, nor should these costs be included as fund-raising costs."

Art. 41, § 103A-103L. For example, § 103B provides for the registration of charitable organizations with the Secretary of State and the furnishing of detailed financial data to the Secretary. Under § 103F, one may not act as a professional fund-raiser counsel or a professional solicitor for a charitable organization unless he also registers with the Secretary, furnishes certain information, pays an annual fee, files a bond, and complies with the requirements of the subtitle. Section 103D (c) states that "[e]very contract or agreement between a professional fund-raiser counsel or a professional solicitor and a charitable organization shall be in writing, and a copy of it shall be filed with the Secretary of State within ten days after it is entered into and prior to any solicitations." Under § 103L (a), a charitable organization, professional fund-raiser counsel or professional solicitor is subject to criminal liability for wilfully violating the requirements of the subtitle.[2] Other sanctions for violating the subtitle are contained in § 103L (b) and (c).[3]

---

2. Art. 41, § 103L (a) provides (emphasis supplied):

"(a) A charitable organization, professional fund-raiser counsel, or professional solicitor which wilfully fails to file a registration statement, report, or other information with the Secretary of State or wilfully files such a statement, report, or other information which is materially false, *or otherwise wilfully violates the requirements of this subtitle,* is guilty of a misdemeanor, and upon conviction, shall be fined not more than $5,000 or sentenced to imprisonment for not more than one year, or be both fined and imprisoned. An officer, director, partner, or trustee of a charitable organization, professional fund-raiser counsel, or professional solicitor which is organized in corporate, partnership, or other organizational form who causes the entity to commit a wilful violation of this subtitle is also guilty of a misdemeanor, and, upon conviction, is subject to the same penalties as the entity."

3. Art. 41, § 103L (b) and (c) provides:

"(b) The Secretary of State is authorized, upon complaint or upon his own motion, to investigate alleged violations of this subtitle. If he finds that a charitable organization, professional fund-raiser counsel, or professional solicitor has violated a provision of this subtitle, he may:

(1) Cancel and annul the registration of the violator;

(2) Refer the matter to the Attorney General for civil enforcement under subsection (c); and

(3) Refer the matter to the appropriate State's attorney for prosecution.

(c) Upon referral by the Secretary of State, the Attorney General may file a civil action in the Circuit Court for Anne

The Joseph H. Munson Co., Inc., instituted this action in the Circuit Court for Anne Arundel County, seeking declaratory and injunctive relief against the Secretary of State. Munson is in the business of promoting fund raising events and giving advice to clients on how those events should be conducted. In Maryland, Munson's clients consist of various chapters of the Fraternal Order of Police. In its amended bill of complaint, Munson alleged that it "regularly charges the said chapters of the Fraternal Order of Police an amount in excess of twenty-five percent (25%) of the total gross income of the event which it is involved in promoting." Munson further alleged that it had been in contact with the Secretary of State, and that the Secretary had taken the position "that the Plaintiff is subject to [§ 103D] . . . and that the continued failure to comply therewith will require the Defendant to seek prosecution of the Plaintiff for violation of the said statute." In counts I and II of its five-count amended bill of complaint,[4] Munson sought a declaratory judgment as to whether it was subject to the registration and 25 percent fund-raising limitation provisions of the statute, as well as injunctive relief. In count III, Munson prayed a declaratory judgment that § 103D contained an unconstitutional delegation of legislative authority to the Secretary of State. In count V, Munson sought a declaration that § 103D on its face violates the First and Fourteenth Amendments to the United States Constitution, on the ground that the 25 percent fund-raising limitation unduly intrudes upon Munson's right to free speech and assembly. Finally, in count IV, Munson asked for an injunction restraining the Secretary from enforcing § 103D.

---

Arundel County for an order restraining further violations of this subtitle, restraining the defendant from conducting any further fund-raising activities in Maryland, enforcing compliance with this subtitle, and such other relief as he deems appropriate. As a condition of registration, each charitable organization, professional fund-raiser counsel, and professional solicitor shall consent in writing to the jurisdiction and venue of the Circuit Court for Anne Arundel County to grant appropriate relief."

4. We note that the use of counts in a bill in equity is inappropriate. Nick-George Ltd. v. Ames-Ennis, Inc., 279 Md. 385, 387 n. 1, 368 A.2d 1001 (1977); Maryland Rule 370 a 1.

In its answer, the Secretary did not flatly deny that he had initially threatened Munson with criminal prosecution. Instead, the Secretary's denial of the allegation concerning threatened prosecution was on the ground that "there had been no determination concerning the applicability of the statute to the Plaintiff or that he is in violation of the Charitable Solicitation Act." The Secretary sought a dismissal of counts I and II on the ground that Munson had not exhausted administrative remedies created by regulations of the Secretary of State. Otherwise, the Secretary asserted that § 103D was constitutional. In a memorandum accompanying the Secretary's answer, the Secretary stated that it "seriously questions Plaintiff's standing to seek a declaratory judgment." In a supplemental memorandum of law, the Secretary argued that Munson lacked standing.

No testimony was taken in the circuit court. Instead, according to the opinion of the circuit court, the case was decided on the pleadings, the memoranda of law submitted, and a stipulation of facts. One of the stipulated facts was that "the Fraternal Order of Police, Montgomery County Chapter, ... is reluctant to enter into a contract with the Plaintiff ... for promotion of fund raising events due to the limitation imposed by Article 41, Section 103, ... that nothing in excess of 25% of the gross income raised through fund raising activities may be expended on fund raising expenses." It was also stipulated that Munson's contracts with Fraternal Order of Police Chapters call for a fee for each event in excess of 25% of the *net* income raised.

The circuit court dismissed counts I and II of the amended bill of complaint on the ground that Munson had failed to exhaust administrative remedies. With regard to counts III and V, the court issued a detailed opinion and declaratory judgment that § 103D was facially valid, and that it neither amounted to an unconstitutional delegation of legislative authority nor violated the free speech guarantee of the First and Fourteenth Amendments. The court accordingly refused to enjoin enforcement of § 103D.

Munson took an appeal to the Court of Special Appeals, contending only that § 103D on its face violated the First

and Fourteenth Amendments. The Secretary took no cross-appeal. The (Court of Special Appeals affirmed, *Joseph H. Munson Co. v. Sec. of State,* 48 Md.App. 273, 426 A.2d 985 (1981). Munson then filed a petition for a writ of certiorari, raising only the free speech issue under the First and Fourteen Amendments, and the Secretary filed a cross-petition, asserting that Munson lacked standing to challenge the First Amendment validity of § 103D. We granted both the petition and the cross-petition.

## I. *Standing*

### A

Although we granted the Secretary's cross-petition challenging Munson's standing, a preliminary question is raised by Munson as to whether we should consider this issue. We shall assume that the Secretary properly raised the issue in the circuit court when, in a memorandum of law, it argued that the action should be dismissed for lack of standing. Instead of dismissing the action, however, the trial court in effect upheld Munson's standing and rendered a declaratory judgment on the merits of the constitutional issues presented in counts III and V of the bill of complaint. Although Munson took an appeal from the declaratory judgment, the Secretary did not file an order of appeal. Munson argues in this Court that, because of the Secretary's failure to take a cross-appeal on the issue of standing, the issue is not properly before us.

Under circumstances where absence of standing would present an alternate ground for upholding a trial court's judgment, an appellee is entitled to argue that ground in an appellate court. *Temony v. State,* 290 Md. 251, 261, 429 A.2d 1018 (1981), and cases there cited. In such situation, a cross-appeal would be unnecessary and, in fact, would be improper. *Offutt v. Montgomery Co. Bd. of Ed.,* 285 Md. 557, 564, n. 4, 404 A.2d 281 (1979). Moreover, in that situation, even if lack of standing were not raised by the appellee, an appellate court noticing the issue would normally consider it

sua sponte under the principle that a judgment will ordinarily be affirmed on any ground adequately shown by the record, whether or not relied on by the trial court or raised by a party. *Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

Thus, in the case at bar, if the trial court had dismissed the action on some ground other than lack of standing, the Secretary as appellee would be entitled to argue Munson's alleged lack of standing as an alternate basis for affirmance. However, the trial court did not dismiss the action. Instead, it rendered a declaratory judgment on the merits. Munson's alleged lack of standing would not furnish an alternate ground for affirming the declaratory judgment. On the contrary, the Secretary's argument amounts to an attack upon the judgment. If the issue is properly before us, and if we agreed that Munson had no standing, we would be obliged to order that the trial court's judgment be reversed and that the case be remanded with directions to dismiss the action.

Consequently, the Secretary is attempting to challenge the trial court's judgment in this case without having taken an appeal. A party to a trial court proceeding, however, is not entitled to seek direct appellate review and reversal of the trial court's judgment unless he has filed a valid, timely order of appeal. *See, e.g., Pearlman v. State,* 226 Md. 350, 173 A.2d 733 (1961); *Riviere v. Quinlan,* 210 Md. 76, 122 A.2d 332 (1956); *Gaines v. Lamkin,* 82 Md. 129, 33 A. 459 (1895); *Hopper v. Jones, Adm'r,* 64 Md. 578, 4 A. 273 (1886); *Walter v. Second Nat'l Bank of Baltimore,* 56 Md. 138 (1881); 2 Poe, *Pleading and Practice* §§ 823-824 (5th ed. H. Tiffany 1925); Maryland Rules 1010, 1011. The Secretary, not having filed an order of appeal, may not on appeal attack the trial court's declaratory judgment. Furthermore, the filing of a cross-petition for a writ of certiorari in this Court cannot overcome the failure of a purported cross-appellant to have taken an appeal from the trial court's judgment.

While the Secretary is in no position to challenge the trial court's judgment, the standing issue may be that type of question which we will resolve on our own motion. When a

case is properly before us on an order of appeal and writ of certiorari, we will sua sponte address a narrow category of issues which come to our attention even though not raised by an appellant, and which may require a reversal of the judgment below. This category includes the jurisdiction of the intermediate appellate court, the jurisdiction of the trial court, and the certain fundamental questions of policy relating to the trial court's exercise of jurisdiction. *See, e.g., Creamer v. Helferstay,* 294 Md. 107, 448 A.2d 332 (1982) (authority of the trial court to grant a particular type of relief); *Sec., Dep't of Human Res. v. Wilson,* 286 Md. 639, 644-645, 409 A.2d 713 (1979) (failure to exhaust administrative remedies); *Attorney Gen. v. A. A. Co. School Bus,* 286 Md. 324, 407 A.2d 749 (1979) (mootness); *Biro v. Schombert,* 285 Md. 290, 293, 402 A.2d 71 (1979) (jurisdiction of the Court of Special Appeals); *Reyes v. Prince George's County,* 281 Md. 279, 282-283, 380 A.2d 12 (1977) (whether suit is collusive); *Hartford County v. Schultz,* 280 Md. 77, 371 A.2d 428 (1977) (whether there is an "actual controversy" between contending parties within the meaning of the Declaratory Judgments Act); *State v. McCray,* 267 Md. 111, 126, 297 A.2d 265 (1972) (subject matter jurisdiction of the trial court). *See also Smith v. Taylor,* 285 Md. 143, 147, 400 A.2d 1130 (1979) (jurisdiction of this Court).

Several Maryland cases, however, indicate that questions concerning the plaintiff's standing to maintain the action do not fall within this category. They take the position that, if the plaintiff's alleged lack of standing is not properly raised by the defendant, an appellate court will not consider the matter. *See Toomey v. Gomeringer,* 235 Md. 456, 460-461, 201 A.2d 842 (1964); *Costello v. Seiling,* 223 Md. 24, 29, 161 A.2d 824 (1960); *Pressman v. Baltimore,* 222 Md. 330, 334, 160 A.2d 379 (1960); *Baltimore v. N.A.A.C.P.,* 221 Md. 329, 332, 157 A.2d 433 (1960); *Pumphrey v. Pumphrey,* 11 Md.App. 287, 292-293, 273 A.2d 637 (1971). On the other hand, some cases seem to suggest that the standing of a plaintiff to maintain an action is an issue which an appellate court will address on its own motion. *Reyes v. Prince George's*

*County, supra,* 281 Md. at 287-289; *Ginn v. Farley,* 43 Md.App. 229, 232, 403 A.2d 858 (1979), *cert. denied sub nom. Engel v. Farley,* 286 Md. 747 (1980); *Balance Limited, Inc. v. Short,* 35 Md.App. 10, 11, 368 A.2d 1116 (1977). *See also Craig v. Boren,* 429 U.S. 190, 192-194, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). The rationale for this view would appear to be that, if a plaintiff lacks standing, there may be no "interested parties" asserting adverse claims, and thus there may be no "justiciable controversy," which is a matter regularly noticed by appellate courts sua sponte. *Reyes v. Prince George's County, supra,* 281 Md. at 288; *Harford County v. Schultz, supra. See also Patuxent Co. v. Commissioners,* 212 Md. 543, 548-549, 129 A.2d 847 (1957).[5]

Whether there is a conflict among the above-cited cases, and whether Munson's standing is an issue properly before us, are questions which need not be resolved in the present case. If we assume for purposes of argument that the issue is before us despite the Secretary's failure to take a cross-appeal, the result will be no different, for we believe that Munson clearly had standing to challenge the facial constitutionality of Art. 41, § 103D.

B

The Secretary's contention that Munson has no standing to attack the constitutionality of § 103D seems to have two related prongs. First, the Secretary argues that § 103D only applies to charitable organizations and there has been no final administrative determination that the various chapters of the Fraternal Order of Police with which Munson contracts are charitable organizations within the meaning of § 103D. Munson, according to the Secretary, failed to exhaust its administrative remedies in this regard. Second, the Secretary contends that even if the Fraternal Order of

---

**5.** "Standing," of course, does involve principles beyond the requirement of a "justiciable controversy." Craig v. Boren, 429 U.S. 190, 193-194, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); Eisenstadt v. Baird, 405 U.S. 438, 443-445, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

Police chapters are charitable organizations, Munson may not assert their First Amendment rights.

However, Munson has clearly suffered injury as a result of § 103D, as the stipulation of facts in the trial court was that the Montgomery County Chapter of the Fraternal Order of Police would not contract with Munson for promotion of fund-raising events because of the 25 percent limitation imposed by § 103.

Futhermore, Munson alleged that the Secretary had been in contact with Munson's counsel, had taken the position that Munson is subject to § 103D, and had stated that, if Munson failed to comply with the statute, the Secretary would seek prosecution of Munson. The Secretary's denial of this allegation was because there had been no final determination by the Secretary concerning the applicability of the statute to Munson or whether Munson was in violation of § 103D. Thus, the Secretary is essentially arguing a failure to exhaust administrative remedies. We have consistently held, however, that when one is attacking the validity of a statute on its face, rather than a particular application of the statute, administrative remedies ordinarily need not be exhausted. *National Asphalt v. Prince Geo's Co.,* 292 Md. 75, 77, n. 2, 437 A.2d 651 (1981); *Shipp v. Bevard,* 291 Md. 590, 599, 435 A.2d 1114 (1981); *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 308-309, 407 A.2d 738 (1979), and cases there cited.

The contention that Munson may not assert the First Amendment rights of the Fraternal Order of Police Chapters with which Munson normally contracts, is also without merit. Although ordinarily one may not assert the constitutional rights of others, nevertheless where a statute is directed at persons with whom the plaintiff has a business or professional relationship, and impairs the plaintiff in that relationship with such other persons, thereby threatening real and immediate injury to the plaintiff, he is normally accorded standing to challenge the validity of the statute. *Craig v. Boren, supra,* 429 U.S. at 194-197; *Singleton v. Wulff,* 428 U.S. 106, 112-118, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 35

L.Ed.2d 201 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 443-446, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Pierce v. Society of Sisters,* 268 U.S. 510, 535-536, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Baltimore v. A. S. Abell Co.,* 218 Md. 273, 281-282, 145 A.2d 111 (1958).

Finally, an argument similar to that which the Secretary makes here was rejected in *Schaumburg v. Citizens For Better Environ.,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d, 73 (1980), also involving a challenge to a charitable solicitation statute imposing a limitation like that in Art. 41, § 103D. In *Schaumburg,* the soliciting organization (CBE) had obtained summary judgment declaring the statute void and enjoining its enforcement. The defendant argued in the Supreme Court that summary judgment was inappropriate because "there was an unresolved factual dispute concerning the true character of CBE's organization" and that the defendant should have had an opportunity to show that CBE "may appropriately be deemed an organization existing for private profit rather than for charitable purposes." 444 U.S. at 633. In rejecting this argument, the Supreme Court stated (*id.* at 633-634) (footnote omitted):

"We agree with the Court of Appeals that CBE was entitled to its judgment of facial invalidity if the ordinance purported to prohibit canvassing by a substantial category of charities to which the 75-percent limitation could not be applied consistently with the First and Fourteenth Amendments, even if there was no demonstration that CBE itself was one of these organizations. Given a case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court. *Grayned v. City of Rockford,* 408 U.S. 104, 114-121 (1972); *Chaplinsky v. New Hampshire,* 315 U.S. 568 (1942); *Schneider v. State,* 308 U.S., at 162-165; *Lovell v. Griffin,* 303 U.S., at 451;

*Thornhill v. Alabama,* 310 U.S. 88, 97 (1940). See also the discussion in *Broadrick v. Oklahoma,* 413 U.S. 601, 612-616 (1973); and in *Bigelow v. Virginia,* 421 U.S. 809, 815-817 (1975). In these First Amendment contexts, the courts are inclined to disregard the normal rule against permitting one whose conduct may validly be prohibited to challenge the proscription as it applies to others because of the possibility that protected speech or associative activities may be inhibited by the overly broad reach of the statute."

We hold, therefore, that Munson had standing to challenge the facial validity of § 103D.

## II. *Constitutionality Of § 103D*

In our view, the Supreme Court's opinion in *Schaumburg v. Citizens For Better Environ., supra,* is also dispositive of the merits, and requires a declaration that § 103D is unconstitutional under the First and Fourteenth Amendments.

*Schaumburg* involved a municipal ordinance which required that every charitable organization intending to solicit contributions in the village " 'by door-to-door solicitation or the use of public streets and public ways, shall prior to such solicitation apply for a permit.' " 444 U.S. at 623. The permit application had to contain satisfactory proof " 'that at least seventy-five percent of the proceeds of such solicitation will be used directly for the charitable purpose of the organization.' " *Id.* at 624. CBE, an environmental organization which solicited contributions from door-to-door, and which could not demonstrate that it would use 75 percent of the receipts for charitable purposes, brought an action for declaratory and injunctive relief.

The Supreme Court in *Schaumburg* held that the expense limitation provision of the ordinance, requiring that 75 percent of the funds collected be used for charitable purposes, violated the free speech clause of the First Amend-

ment, applicable to state legislation under the Fourteenth Amendment. In reaching this conclusion, the Court rejected the Village's argument that charitable solicitation is not "speech" protected by the First Amendment as long as the charity is free to propagate its views. The Court discussed and relied on several cases holding that charitable, religious or other solicitation is protected by the First Amendment. *Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Jamison v. Texas,* 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943); *Largent v. Texas,* 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873 (1943); *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *Martin v. Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976). The Court also relied on *Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942), and *Breard v. Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), involving commercial solicitation, with the Court noting (444 U.S. at 632-633, n.7) that today, under *Va. Pharmacy Board v. Va. Consumer Counsel,* 425 U.S. 748, 758-759, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), commercial speech is not excluded from First Amendment protections. After reviewing these cases, the Court stated (444 U.S. at 632):

"Prior authorities, therefore, clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests — communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes — that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for par-

ticular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease."

The Court then set forth what it regarded as the issue in the case (*Id.* at 633):

"The issue before us, then, is not whether charitable solicitations in residential neighborhoods are within the protections of the First Amendment. It is clear that they are. '[O]ur cases have long protected speech even though it is in the form of . . . a solicitation to pay or contribute money, *New York Times Co. v. Sullivan* [376 U.S. 254 (1964)].' *Bates v. State Bar of Arizona,* 433 U.S., at 363.

"The issue is whether the Village has exercised its power to regulate solicitation in such a manner as not unduly to intrude upon the rights of free speech."

In considering whether the expense limitation unduly intruded upon free speech, the Court in *Schaumburg* characterized "the 75-percent limitation [as] . . . a direct and substantial limitation on protected activity that cannot be sustained unless it serves a strong, subordinating interest that the Village is entitled to protect." 444 U.S. at 636. Pointing out that prevention of fraud was the Village's principal justification (*ibid.*), the Court stated that many charitable organizations may use more than 25 percent of the receipts for salaries, research, etc., and that a governmental body "consistently with the First Amendment, may not label such groups 'fraudulent' and bar them from canvassing," *id.* at 636-637. The Court, in striking down the ordinance, concluded that the "legitimate interest in preventing fraud can be better served by measures less intrusive than a direct prohibition on solicitation. Fraudulent misrepresentations can be prohibited and penal

laws used to punish such conduct directly." *Id.* at 637.[6]

The Secretary of State argues that the instant case is distinguishable from *Schaumburg* in two significant respects. It is contended that, in light of these two distinctions, the 25 percent expense limitation in § 103D is valid under the principles set forth in *Schaumburg.*

### A

First, the Secretary states that *Schaumburg* involved a "prior restraint" upon charitable solicitation, as solicitation from door-to-door or solicitation using the public streets was absolutely prohibited unless a permit was first obtained. Under § 103D, the Secretary's argument continues, solicitation is permitted without having to obtain a permit from an administrative official. The Secretary asserts "that the Maryland statute does not impose any prior restraints on the solicitation and collection of funds." (Brief, p. 11). According to the Secretary, it is only when the solicitation is in violation of the statute that it becomes prohibited and subject to the criminal penalty in § 103L(a). The Secretary, in oral argument before us, urged that the criminal penalty under the Maryland statute was the type of criminal sanction to prevent fraud of which the Supreme Court approved in *Schaumburg.*

Preliminarily, with regard to the matter of "prior restraint," we point out that the distinction between the two statutes is not as clear-cut as the Secretary's argument seems to suggest. It is not a situation where one statute involves complete prior restraint upon charitable solicitation whereas the other statute involves no prior restraint. In fact, the Maryland Act would seem to involve a much more sweeping "prior restraint" upon protected speech than the *Schaumburg* ordinance. The *Schaumburg*

---

6. The Court in *Schaumburg* also pointed out that requiring public "disclosure of the finances of charitable organizations also may assist in preventing fraud by informing the public of the ways in which their contributions will be employed." 444 U.S. at 638.

ordinance required a permit only to solicit from door-to-door or by using the public streets. No permit was required for other types of charitable solicitation. Under the Maryland statute, before any charitable organization, professional fund-raiser counsel or professional solicitor is entitled to engage in *any* form of charitable solicitation, it must first submit an application to register with the Secretary of State, submit information under oath, pay a fee, and meet other requirements. Art. 41, §§ 103B and 103F. Furthermore, under § 103F (d), no solicitation may begin until the Secretary "shall approve the registration" of a professional fund raiser counsel or professional solicitor. And he is only to approve such registration if he finds that the application is in conformity with the requirements of the subtitle as well as the rules and regulations of the Secretary. *Ibid.*[7] It would

---

**7.** Art. 41, § 103F, provides as follows:

"§ 103F. Registration of professional fund-raiser counsel and professional solicitor; bonds.

(a) A person may not act as a professional fund-raiser counsel or professional solicitor for a charitable organization unless he has first registered with the Secretary of State. Applications for registration shall be in the form prescribed by the Secretary of State, shall contain the information required by him, and shall be under oath. The application for registration by a professional fund-raiser counsel or a professional solicitor or renewal of it shall be accompanied by an annual fee of $100. A partnership, corporation or other entity which intends to act as a professional fund-raiser counsel or professional solicitor, may register for and pay a single fee of $100 on behalf of all its members, officers, agents, and employees. However, the names and addresses of all officers, agents, and employees, of the professional fund-raiser counsel or professional solicitor, and all other persons employed to work under its direction must be listed in the application.

(b) Every professional fund-raiser and professional solicitor shall, at the time of making application, file with and have approved by the Secretary of State a bond in which the applicant shall be the principal obligor in the sum of ten thousand dollars ($10,000) with one or more sureties satisfactory to the Secretary of State, whose liability in the aggregate as such sureties will at least equal the sum and maintain the bond in effect so long as a registration is in effect. The bond shall run to the State of Maryland for the use of the State and any person who may have a cause of action against the obligor of the bonds for any losses resulting from malfeasance, nonfeasance or misfeasance in the conduct of solicitation activities. A partnership or corporation which is a professional fund-raiser may file a consolidated bond on behalf of all its members, officers and employees.

(c) Each registration is valid for one year and may be renewed

seem that the difference between a "permit" issued by an administrative official and an "approval" of a registration application issued by an administrative official is purely a semantic one.

The Maryland statute involves a "prior restraint" upon speech in other respects. Under § 103D (c), every contract between a charitable organization and a professional fund-raiser counsel or professional solicitor must be submitted to the Secretary of State within ten days of the contract. A charity which contracts with a professional fund-raiser counsel or professional solicitor to pay as expenses more than 25 percent of the gross income raised, must under § 103D obtain a "permit" from the Secretary of State before charitable solicitation under the contract can begin.

Another example of prior restraint is found in § 103L (b) and (c). Under that section, if the Secretary believes that a charitable organization, professional fund-raiser counsel or professional solicitor has violated a provision of the subtitle, he may cancel the alleged violator's registration, or he may refer the matter to the Attorney General who is authorized to seek a court order "restraining the defendant from conducting any further fund-raising activities in Maryland."

Apart from the degree of "prior restraint" in the Maryland statute, we do not believe that, in the context here, there is any merit in the distinction drawn by the Secretary between "prior restraint" of a form of speech and criminal sanctions for engaging in a form of speech. In *Schaumburg,* the Court

---

for additional one-year periods upon application to the Secretary of State, payment of the renewal fee, and proof that the required bond, cash, or cash equivalent is and will remain in effect.

(d) If the Secretary of State finds that the application is in conformity with the requirements of this section and the rules and regulations adopted pursuant to it, and that the registrant has complied with the requirements of this subtitle and the rules and regulations adopted pursuant to it, he shall approve the registration. An applicant whose application for registration is denied, may within 30 days from the date of notification of the denial, request in writing a hearing before the Secretary of State. A hearing shall be held within 60 days from the date the Secretary of State receives the request."

clearly held that charitable solicitation for funds is protected speech within the meaning of the First Amendment, and that a 25 percent limit upon the amount that could be paid for expenses unduly intruded upon the right of free speech. The Court in no way suggested that enforcement of this limitation by a criminal sanction, as opposed to a permit requirement, would make it substantially less an intrusion upon free speech. On the contrary, in reaching its conclusion, the Supreme Court relied on several cases involving criminal sanctions for solicitation rather than permit requirements.*See Hynes v. Mayor of Oradell, supra,* 425 U.S. at 612-613; *Breard v. Alexandria, supra; Martin v. Struthers, supra; Jamison v. Texas, supra; Valentine v. Chrestensen, supra.*

Lastly, it is clear that the criminal penalty for exceeding the 25 percent expense limitation, Art. 41, § 103D, is not the type of criminal penalty for fraud which the Supreme Court sanctioned in *Schaumburg.* The Secretary argues that the 25 percent expense limitation protects "the citizenry of Maryland from sham and fraud." (Brief, p. 18.) However, under the Maryland statute, if one fails to meet the 25 percent limitation in a charitable solicitation and has not obtained a permit from the Secretary waiving the limitation, he is criminally liable regardless of whether he has made fraudulent misrepresentations. The Supreme Court in *Schaumburg,* when it indicated that "less intrusive means" to prevent fraud could be used than a prohibition on solicitation if less than 75 percent went to charitable purposes, stated that "[f]raudulent misrepresentations can be prohibited and penal laws used to punish such conduct directly." 444 U.S. at 637. Obviously the Court was referring to a statute punishing only fraudulent misrepresentations, and not a statute punishing non-fraudulent solicitations if the expenses exceeded a particular percentage.

## B

The second distinction between *Schaumburg* and the instant case, which the Secretary argues is constitutionally

significant, is that the *Schaumburg* ordinance contained no exception to the 25 percent expense limitation, whereas § 103D (a) directed the Secretary to "issue rules and regulations to permit a charitable organization to pay or agree to pay for expenses in connection with a fund-raising activity more than 25% of its total gross income in those instances where the 25% limitation would effectively prevent the charitable organization from raising contributions." Because of this exception in § 103D, the Secretary argues that the Maryland statute is more flexible and "regulates First Amendment freedom of speech in such a way as to minimize encroachment on individual rights," (brief, p. 18).

The argument that the 25 percent expense limitation in § 103D represents substantially less an intrusion upon First Amendment rights than the *Schaumburg* ordinance, is difficult to accept, considering that the *Schaumburg* ordinance was limited to solicitations from door-to-door and those using the public streets, whereas § 103D embraces all charitable solicitations including telephone solicitations, mail solicitations, speeches at meetings held in private places as well as public, etc.

Moreover, the exemption in the Maryland statute is not an exemption by virtue of the statute alone; instead the Secretary of State is directed to issue regulations to provide for such exemption and to issue permits. Permit requirements to engage in protected solicitation, even with guidelines for the issuing administrative officials, were invalidated in several prior cases relied upon by the Supreme Court in *Schaumburg. See Largent v. Texas, supra; Cantwell v. Connecticut, supra; Schneider v. State, supra.*

Finally, the authorization for exemption regulations in the Maryland statute is extremely narrow. The Secretary, in promulgating regulations for permits waiving the 25 percent expense limitation, is confined to "those instances where the 25% limitation would effectively prevent the charitable organization from raising contributions." Art. 41, § 103D. In *Schaumburg,* however, the Court did not limit its

concern to organizations which could not raise contributions without exceeding the 25 percent expense limitations. Rather, the Court clearly indicated that charitable organizations making a policy decision to use more than 25 percent of the proceeds raised for purposes other than "charitable," had a constitutional right to do so, that all such organizations could not be lumped with those engaging in fraud, and that the governmental body may implement its legitimate interests in preventing fraud only "by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." 444 U.S. at 637.

We conclude that the limited provision in § 103D, directing the Secretary to promulgate regulations for waiver permits in those instances where the 25 percent limitation would "effectively prevent the charitable organization from raising contributions," does not save the section under the *Schaumburg* opinion.[8]

Upon remand, the circuit court should enter a judgment declaring that Art. 41, § 103D (a) and (b), is invalid under the First Amendment to the United States Constitution. The

---

**8.** Both the Court of Special Appeals and the circuit court, in upholding § 103D, relied on the pre-*Schaumburg* decision of the United States Court of Appeals for the Fifth Circuit in National Foundation v. City of Fort Worth, 415 F.2d 41 (5th Cir. 1969), *cert. denied,* 396 U.S. 1040, 90 S.Ct. 688, 24 L.Ed.2d 684 (1970). In that case, the Fifth Circuit upheld an ordinance which contained a presumption that solicitation expenses exceeding 20 percent of the amount raised were "unreasonable," although one could show that under the circumstances expenses higher than 20 percent "were not unreasonable." The statute also contained many other exemptions from the regulations of charitable solicitations, and thus from the expense limitation. The Supreme Court in *Schaumburg,* without indicating approval or disapproval of the Fifth Circuit's decision, noted that it was distinguishable. 444 U.S. at 635-636. We need not in this case decide whether *National Foundation* can be squared with the principles set forth in *Schaumburg,* because the ordinance involved in *National Foundation* was quite different than § 103D. In that case, the ordinance itself contained much broader exemptions from the expense limitation. *See also* Fernandes v. Limmer, 663 F.2d 619, 630-632 (5th Cir. 1981) (applying *Schaumburg* to invalidate a statute imposing an expense limitation on charitable solicitations, and distinguishing *National Foundation* because of the exemptions in the ordinance involved in that case).

court should also enjoin the enforcement of subsections (a) and (b) of § 103D.

> *Judgment of the Court of Special Appeals reversed, and case remanded to that Court with directions to reverse the judgment of the Circuit Court for Anne Arundel County and remand the case for entry of a judgment consistent with this opinion.*
> *Respondent to pay costs.*