635 A.2d 432

**Ronnie BAILEY**

v.

**MARYLAND STATE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES.**

**No. 41, Sept. Term, 1993.**

Court of Appeals of Maryland.

Jan. 13, 1994.

**398**

Barry C. Steel, Towson, for petitioner.

Bruce P. Martin, Asst. Atty. Gen. (J. Joseph Curran, Jr., Steven G. Hildenbrand, Asst. Atty. Gen.), all on brief, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

Lieutenant Ronnie Bailey appeals from a decision of the Court of Special Appeals denying him the right, as a supervisory employee of the Maryland State Department of Public Safety and Correctional Services (hereinafter "Department of Public Safety"), to represent other State employees in grievance proceedings against the State. Bailey raises the following principal issues for review by this Court:

1. Does he possess the requisite standing to challenge the Department of Public Safety's policy of denying management-level employees from representing fellow employees in grievance proceedings?

2. Does the case of a management-level employee, who represents other employees in grievance proceedings, constitute a conflict of interest as a matter of law?

3. Does the Department of Public Safety's policy improperly infringe upon Bailey's first amendment right to free speech?

For the reasons stated below, we hold that Bailey has standing to challenge the Department of Public Safety's denial of his right to represent other employees in grievance proceedings and such representation does not constitute a conflict of interest as a matter of law.

## I.

Ronnie Bailey is a correctional officer employed by the Division of Correction (hereinafter "Division") at its Brockbridge Correctional Facility in Jessup, Maryland. The Division is a branch of the Department of Public Safety, which is

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, § 3A, he also participated in the decision and adoption of this opinion.

the Respondent in this appeal. In February of 1989, Bailey was promoted from the position of "Correctional Officer III" to that of "Correctional Officer IV" (Lieutenant).

According to the State Department of Personnel's job description, the Correctional Officer IV position is considered the "first level of supervisory work in the maintenance of security at adult correctional facilities." The primary responsibility of these officers is to supervise Correctional Officers I, II and III in carrying out the duties of their respective posts and assignments. A Correctional Officer IV directly supervises a unit of at least four Correctional Officers I, II, and III on an assigned shift at an institution. A Correctional Officer IV may also be required to assume the duties of a Correctional Officer V or VI in the latter officer's absence. The Correctional Officer IV position is considered lower-level management unlike Bailey's prior position of Correctional Officer III.

At the time of his promotion to Correctional Officer IV, Bailey represented fellow employees in various grievance proceedings. Bailey's representation of his fellow employees may have been in part related to his union activities. Bailey was the President of local chapter 1678 of a Maryland state employees union. Even though the Department of Public Safety contends that it is an inherent conflict of interest for Lieutenant Bailey to represent employees in such grievance proceedings, it has not prohibited him from engaging in any other union activities.

On February 22, 1989, Bailey met with his shift commander and with the Brockbridge Correctional Facility's Assistant Warden, William O. Filbert, Jr. At that meeting, Bailey was advised that he could no longer represent employees in grievance proceedings. A follow-up memorandum, dated February 23, 1989, advised Lieutenant Bailey that this decision was based on three declaratory rulings issued by the Department of Personnel.[1] It is important to note that Bailey volunteered

---

1. The first declaratory ruling, issued October 31, 1979, concluded that a management employee could serve as an employee representative ex-

to refrain from representing any employee of the Brockbridge Correctional Facility, or any other employee in a grievance where his representation might present an actual conflict of interest.

On May 10, 1989, Bailey met with Fred E. Jordan, Jr., the Commissioner of the Division of Correction. On May 31, 1989, the Commissioner sent Bailey a memorandum which consisted of the following directives:

"(1) You may not represent other current or previous employees of the Division of Correction or its institutions and agencies at hearings conducted by the Department of Personnel, the Department of Public Safety and Correctional Services, the Division of Corrections or any agency of the Division of Corrections.

(2) You may continue to represent in any case which was initially appealed and in which the employee requested your assistance prior to your receipt of this memo.

(3) Within one week of your receipt of this memo you will submit to Acting Warden Leftridge a list of all cases in which you are the representative as of that time."

---

cept in a case of an actual conflict of interest. The following reasoning was offered to support that decision:

> "The clear policy behind the Grievance Procedures is set forth in § 55(d) of Article 64A: 'Every effort shall be made by both parties to resolve the grievance at the lowest possible level.' A prohibition against employees in management positions serving as 'employee representatives' would not further that policy.
>
> *     *     *     *     *     *
>
> We believe the concept of a 'united management front' opposing a 'united employee front' is not appropriate to Maryland State government and would not further any of the aims of the State personnel system."

The second declaratory ruling, issued July 2, 1984, deemed it inappropriate for a supervisor of a large number of employees, who also acted as a hearing officer, to continue as an employee grievance representative.

The third declaratory ruling, issued December 27, 1984, concluded that, if a management employee represents an employee from another department or agency, there usually is no conflict. On the other hand, an "inherent conflict of interest [exists] between the roles of supervisor or neutral hearing officer for the Department" and "employee advocate" within the same Department.

On June 8, 1989, Bailey filed a grievance appeal petition claiming that he was aggrieved by the Division's denial of his "right to function as [an] employee representative[ ] in accordance with ... Article 64A of the [A]nnotated Code." *See* Maryland Code (1957, 1988 Repl.Vol.), Article 64A, § 53(b) (providing that "[a]ny employee authorized to present a grievance may be represented at any stage of the grievance procedure by any person or persons of his choice").[2] A hearing was eventually held before a hearing officer of the State Department of Personnel. Lieutenant Bailey was the only individual to testify at this hearing. On December 18, 1989, the hearing officer dismissed Bailey's appeal on the grounds that the grievance was not timely filed. Bailey appealed that decision to the Circuit Court for Baltimore County. The circuit court reversed and remanded the case for a decision on its merits.

On January 25, 1991, a hearing on the merits was held before an Administrative Law Judge (hereinafter "ALJ") in the Office of Administrative Hearings.[3] In his decision regarding Bailey's grievance, the ALJ concluded that "[i]t is unreasonable to believe that [a] supervisor could represent employees with grievances against management where that representative is part of the management team." The ALJ also determined that Article 64A, § 53(b), which provides that an employee with a grievance may be represented "by any

---

**2.** Effective October 1, 1993, Article 64A, §§ 52 through 57, were repealed and reenacted without substantive change primarily as Maryland Code (1993), State Personnel and Pensions Article, §§ 10–101 through 10–304. *See* Chapter 10 of the Acts of 1993, § 2, at 798–810. *See also* Md.Code (1993), State Personnel & Pensions Art., §§ 10–101, 10–102 & 10–204(a) (repealing and reenacting pertinent portions of Article 64A, §§ 52 and 53 respectively).

Article 64A was controlling at the time Lieutenant Bailey filed the original grievance in this case. Therefore, all references in this opinion are to Md.Code (1957, 1988 Repl.Vol.), Article 64A, §§ 52 through 57, unless otherwise indicated.

**3.** The Office of Administrative Hearings was created on January 1, 1990 by Chapter 788 of the Acts of 1989, and the hearings office of the Department of Personnel became part of the new administrative hearings office. *See* Md.Code (1984, 1993 Repl.Vol., 1993 Cum.Supp.), State Gov't Art., §§ 9–1601 through 9–1610.

person or persons of his choice," governs the employee with a grievance but not the representative. The ALJ finally concluded that, because § 53(b) is directed at a grievant, the representative of said grievant "does not have standing to use this section of the law."

Bailey again appealed the decision to the Circuit Court for Baltimore County (Hinkel, J.), and the court reversed the ALJ's decision. The circuit court found that the General Assembly placed no limitations on "management representation" in the provisions of § 53, and that such a restriction should not be implied unless an actual conflict of interest exists.

The Department of Public Safety appealed to the Court of Special Appeals which reversed the circuit court's decision. *See Dep't of Public Safety v. Bailey*, 95 Md.App. 12, 619 A.2d 176 (1993). The Court of Special Appeals held that Bailey lacked standing under § 53(b) because he was not an "aggrieved" party. *Bailey*, 95 Md.App. at 26, 619 A.2d at 183. The court also held that Bailey lacked standing to assert that the Division infringed upon his first amendment right to free speech. Subsequently, this Court granted Bailey's petition for a writ of certiorari to address these issues.

## II.

As a preliminary matter, Bailey contends that the standing issue was "not raised or briefed by either party in the appeal to the Court of Special Appeals" and, therefore, the intermediate appellate court should not have reviewed the issue. Even assuming the Department of Public Safety failed to contest Bailey's standing, the record in this case indicates the issue was specifically decided at the administrative level and by the Court of Special Appeals. We also concur with the Court of Special Appeals' conclusion that the circuit court implicitly decided the standing issue by reversing the ALJ's decision, even though the circuit court made no explicit statement as to standing. *See Bailey*, 95 Md.App. at 26, 619 A.2d at 183.

Judicial review of the standing issue is, therefore, appropriate in the instant case.[4]

The circuit court's review of the ALJ's decision was governed by § 10–215(g) of the State Government Article, which provided as follows:

"In a proceeding under this section, the court may:

\* \* \* \* \* \*

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

Md.Code (1984), State Gov't Art., § 10–215(g). *See* Md.Code (1984, 1993 Repl.Vol., 1993 Cum.Supp.), State Gov't Art., § 10–222(h) (providing standard for judicial review previously found in § 10–215(g)). This Court held that the "substantial evidence" test of § 10–215(g)(3)(v) is a deferential one, and a court should not substitute its own judgment for that of the

---

4. In *Joseph H. Munson Co. v. Sec. of State*, 294 Md. 160, 448 A.2d 935 (1982), *aff'd*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), this Court recognized conflicting case law concerning review of a party's standing absent proper preservation of the issue. The Court acknowledged that several Maryland cases "take the position that, if the plaintiff's alleged lack of standing is not properly raised by the defendant, an appellate court will not consider the matter." *Munson*, 294 Md. at 169, 448 A.2d at 940. The Court, however, concluded the following: "If we assume for purposes of argument that the issue is before us despite the [Respondent's] failure to [raise the issue], the result will be no different, for we believe that [the Petitioner] clearly had standing...." *Munson*, 294 Md. at 170, 448 A.2d at 941. As in *Munson*, resolution of whether the standing issue is properly before this Court does not alter the result in the instant case because Bailey clearly has standing to challenge the Department of Public Safety's actions.

administrative agency in question. *Caucus v. Maryland Securities*, 320 Md. 313, 324, 577 A.2d 783, 788 (1990). The Court explained, however, that such deference pertains to an agency's factual determinations and the inferences drawn therefrom, but when the agency's decision is "predicated solely on an error of law, no deference is appropriate...." *Id.* Consequently, even if we determine that the ALJ's decision concerning Bailey's alleged lack of standing is based upon substantial evidence, reversal would still be warranted if the decision is also "affected by any other error of law."

█ Section 10–215(a) of the State Government Article states that a "party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section." Md.Code (1984), State Gov't Art., § 10–215(a). *See* Md.Code (1984, 1993 Repl.Vol., 1993 Cum. Supp.), State Gov't Art., § 10–222(a). In order for standing to be properly conferred under § 10–215(a), one must meet the following requirements: (1) the dispute must constitute a "contested case"; and (2) "one must both be a 'party' to the administrative proceedings and be 'aggrieved' by the final decision of the agency." *Medical Waste Associates, Inc. v. Maryland Waste Coalition, Inc.*, 327 Md. 596, 611, 612 A.2d 241, 248 (1992); *Md.–Nat'l Cap. P. & P. Comm'n v. Friendship Hts.*, 57 Md.App. 69, 77, 468 A.2d 1353, 1357, *cert. denied*, 300 Md. 89, 475 A.2d 1200 (1984); *Bryniarski v. Montgomery County Board of Appeals*, 247 Md. 137, 143, 230 A.2d 289, 293 (1967).

█ Lieutenant Bailey's grievance is the result of a direct order issued individually to him by the Division of Correction which prohibits him from representing fellow employees in grievance proceedings. Bailey claims he was specifically denied the right to continue an activity in which he was engaging at the time of his promotion, and which he wishes to continue in the future. An appeal from the denial of such a right constitutes a "contested case" under § 10–215. Bailey was also the complainant at the administrative level and a named party in each appellate proceeding thereafter. Consequently,

he has achieved the status of a "party" to the proceedings in the case. The remaining issue is, therefore, whether Lieutenant Bailey was "aggrieved" according to the provisions of §§ 52 and 53(b) of Article 64A, which governed employee grievances against the State.

■ Section 53(b) provides that "[a]ny employee authorized to present a grievance may be represented at any stage of the grievance procedure by any person or persons of his choice." The ALJ determined that § 53(b) is directed toward an "employee authorized to present a grievance" against the State, but not the "person or persons" chosen to represent that employee. Likewise, the Court of Special Appeals concluded that the General Assembly did not intend "the use of the word 'any' [in the statute] to create a right in supervisors to act as representatives." *Bailey*, 95 Md.App. at 26, 619 A.2d at 183. The intermediate appellate court decided Lieutenant Bailey "failed to allege ... that any interest of his [was] injured separate and apart from an employee who might be precluded from choosing him as [a] representative." *Bailey*, 95 Md.App. at 21, 619 A.2d at 181. Accordingly, the Court of Special Appeals concluded that Bailey lacked standing because he was not an "aggrieved" party under § 53(b) or this Court's prior decisions. We disagree.

First, the plain language of § 53(b) indicates an intention that "any" individual may be chosen as a grievance representative. This would seem to include an employee in a management position, where such representation does not actually conflict with his or her supervisory responsibilities. We find no express restrictions concerning management employees acting as representatives, nor any indication of such a legislative intention. *See* Art. 64A, §§ 52–57.

Second, Lieutenant Bailey had a continuing interest in representing fellow employees that predated his promotion to the Correctional Officer IV position. He also had cases pending at the time of that promotion, and he wishes to continue such activities in the future. Bailey was aggrieved, therefore, when the Division issued him a direct order ex-

pressly prohibiting him from engaging in an activity of his choosing which was not specifically restricted by the statutory language of § 53(b) unless the activity results in an actual conflict of interest.

The Court of Special Appeals reasoned that the Department's decision that Bailey "not be permitted to represent employees against management[,] was a policy decision; it did not, however, relate to conditions of employment." *Bailey*, 95 Md.App. at 29, 619 A.2d at 185. Unlike the court below, we consider this directive to be a condition of Bailey's employment as a Lieutenant. Bailey was expressly ordered not to "represent other current or previous employees of the Division of Correction or its institutions and agencies at hearings conducted by the Department of Personnel, the Department of Public Safety and Correctional Services, the Division of Corrections or any agency of the Division of Corrections." It would be unreasonable to consider a direct command by the Commissioner of the Division of Correction as anything other than a specific condition of Bailey's employment.

The Department of Public Safety argues that this order was justified because the mere occupancy of a management position constitutes a conflict of interest as a matter of law. The Court of Special Appeals also considered it "unreasonable, illogical, and inconsistent with common sense" to permit a management-level employee to act as a grievance representative. *Bailey*, 95 Md.App. at 25, 619 A.2d at 183. Although we are unable to determine from the record whether there is an actual conflict in the instant case, we believe that identifying actual conflict-of-interest situations before automatically precluding one from representing fellow employees is more in accord with common sense and the plain language of § 53(b). This is especially true for an employee in Lieutenant Bailey's position, who typically supervises shifts of only four other employees at the Brockbridge facility. In addition, Bailey agreed not to represent employees where an actual conflict of interest exists (*e.g.,* employees working at the Brockbridge facility). In light of these facts, the imposition of a *per se* restriction upon Lieutenant Bailey seems an unreasonable

interpretation of § 53(b)'s objectives, absent evidence of an actual conflict of interest.[5]

Finally, the Court of Special Appeals asserted that Lieutenant Bailey was not aggrieved based upon the common law standing principles elucidated by *Medical Waste Associates, Inc. v. Maryland Waste Coalition, Inc.*, 327 Md. 596, 612 A.2d 241 (1992). We find the *Medical Waste Associates* case distinguishable, however, from the grievance at issue in this case. In *Medical Waste Associates*, an environmental organization (the "Maryland Waste Coalition") sought to challenge the issuance of construction permits for a medical waste incinerator. The Coalition sued on behalf of its members, the residents of the community in which Medical Waste Associates sought to build the incinerator. The Coalition argued that it met the common law standing requirements because "it brought the suit on behalf of its individual members, rather than to vindicate a group property interest, and that those individual members had an injury which differed from that of the general public." *Medical Waste Associates*, 327 Md. at 602, 612 A.2d at 244.

In response to the Coalition's argument, this Court stated the following:

> "[I]f an individual or organization is seeking to redress a public wrong, our prior cases have held that an individual or an organization ' "has no standing in court unless he has also suffered some ... special damage from such wrong differing in character and kind from that suffered by the general public." ' "

*Medical Waste Associates*, 327 Md. at 613, 612 A.2d at 249 (quoting *Rogers v. Md.–Nat'l Cap. P. & P. Comm'n*, 253 Md. 687, 691, 253 A.2d 713, 715 (1969), in turn quoting *Weinberg v. Kracke*, 189 Md. 275, 280, 55 A.2d 797, 799 (1947)). The Court

---

5. Of course, Bailey's representation of grievants is a personal and not an official undertaking; it does not constitute any part of his employment duties. He, therefore, must take authorized leave of his official duties when representing grievants in strict accordance with departmental regulations.

concluded that the Coalition lacked standing to challenge the permits. *Medical Waste Associates*, 327 Md. at 614, 612 A.2d at 250.

*Medical Waste Associates* is distinguishable from the instant case because it essentially concerns an organization's standing to sue on behalf of its members. On the other hand, Lieutenant Bailey is challenging the Division's direct order based on his own personal interest in continuing to represent fellow employees in grievance proceedings. His standing to do so is not based on the injury that those employees might suffer because they could not choose him as a representative, as asserted by the Court of Special Appeals, but on the denial of his own personal right to continue such representation. *See Bryniarski*, 247 Md. at 144, 230 A.2d at 294 (asserting that only an allegation of aggrievement is necessary; "[i]t is sufficient if the facts constituting aggrievement appear in the petition for appeal either by express allegation or by necessary implication"). Due to the Division's order, Lieutenant Bailey clearly suffered an injury " ' "differing in character and kind from that suffered by the general public." ' " *Medical Waste Associates*, 327 Md. at 613, 612 A.2d at 249 (quoting *Rogers*, 253 Md. at 691, 253 A.2d at 715, in turn quoting *Weinberg*, 189 Md. at 280, 55 A.2d at 799).

In conclusion, we hold that Lieutenant Bailey is an aggrieved party within the meaning of Article 64A, §§ 52 and 53(b), and he possesses standing to challenge the decision of the ALJ. Because the imposition of a *per se* restriction upon a supervisor who seeks to represent fellow employees is an unreasonable interpretation of the statute's objectives, we find that the ALJ's decision concerning this issue was arbitrary and capricious. As no evidence of an actual conflict of interest was presented in the instant case, we will not deem one to exist as a matter of law. Instead, we shall remand the case in order for further determination of whether such a conflict actually exists.

Since we now hold that Bailey has fulfilled the standing requirements of § 53(b), there is no need to address the

question of whether standing is also founded on the Department of Public Safety's alleged infringement on his first amendment right to free speech.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE ADMINISTRATIVE AGENCY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.