664 A.2d 400

STATE of Maryland COMMISSION ON HUMAN RELATIONS

v.

ANNE ARUNDEL COUNTY, Maryland.

No. 1734, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Sept. 5, 1995.

222

Lee D. Hoshall, Asst. Gen. Counsel (Glendora C. Hughes, General Counsel, on the brief), Baltimore, for appellant.

Gail Thuman Watson, Asst. County Atty. (Phillip F. Scheibe, County Atty., on the brief), Millersville, for appellee.

Argued before BISHOP, BLOOM and HARRELL, JJ.

HARRELL, Judge.

Appellant, the Maryland Commission on Human Relations ("the Commission"), ostensibly filed this appeal after the Circuit Court for Anne Arundel County affirmed an order by the Commission's Appeal Board ("the Board") dismissing a charge of employment discrimination that had been maintained by the Commission staff against Anne Arundel County ("the County"). The charges against the County stemmed from a complaint of discrimination filed in October 1990 by James F. Tucker. Tucker alleged that the County had unlawfully discriminated against him when it had excluded him from

consideration for employment as a firefighter/emergency medical technician due to a congenital color vision deficiency. Hearings on the matter were held before an administrative law judge ("ALJ") of the Office of Administrative Hearings. The ALJ issued a provisional decision and order dismissing the charges based upon his determination that the Commission staff and Tucker had failed to satisfy their burden of demonstrating that Tucker met the definition of a 'handicapped individual' under Md.Ann.Code, Art. 49B, § 15(g). The Commission staff appealed the ALJ's decision to an appeal board of the Commission, which affirmed the ALJ's order dismissing Tucker's complaint. A Petition for Judicial Review was filed on behalf of the Commission in the Circuit Court for Anne Arundel County. A subsequent timely appeal to this Court followed the circuit court's affirmance of the Board's decision.

## BACKGROUND

To aid in the understanding of the case *sub judice,* we begin with a contextual overview of the administrative process that employment discrimination complaints follow in Maryland.[1] The Commission, originally established by the General Assembly in 1927,[2] administers and enforces the Maryland Fair Employment Practices Law, Public Accommodations Law, and Housing Discrimination Law. The Commission is composed

---

1. Citations herein to statutes and COMAR are to the section numbers as currently codified. Certain COMAR regulations may have appeared in differently numbered subsections at the time of the events relevant to this appeal. Except where noted, no substantive changes to the Rules of Procedure of the Commission discussed here have occurred in the interim.

2. The Human Relations Commission traces its origin to Chapter 559 of the Acts of 1927, which created the Interracial Commission. In 1943, by Chapter 431 of the Acts of 1943, the Interracial Commission was reorganized as the Commission to Study Problems Affecting the Colored Population. Renamed in 1951 as the Commission on Interracial Problems and Relations (Chapter 548, Acts of 1951), the agency subsequently became the Human Relations Commission by virtue of Chapter 83 of the Acts of 1968.

of nine members who are appointed by the Governor for terms of six years. Maryland Ann.Code, Art. 49B, § 1. The Governor also appoints the Commission's Executive Director from a list of five names submitted by the nine Commission members. Art. 49B, § 2(a). General counsel for the agency is appointed by the Executive Director with the approval of the Commission members. Art. 49B, § 2(c).

Article 49B, § 9A provides that any person claiming to be aggrieved by an alleged act of unlawful employment discrimination may file a complaint in writing with the Commission stating the name of the person or entity alleged to have committed the act of discrimination and the particulars thereof. *See also* Md.Regs.Code tit. XIV, § 03.01.02A ("COMAR"). After the filing of a complaint, the Executive Director of the Commission considers the allegations. Art. 49B, § 10. If it is deemed valid in accordance with the considerations set forth in COMAR 14.03.01.02F(1), the complaint is authorized by the Executive Director or his or her designee. COMAR 14.03.01.03F(2). The matter is then referred to other Commission staff for prompt investigation. The Commission staff must serve upon the respondent a copy of the complaint and the written findings of the staff. Art. 49B, § 10; COMAR 14.03.01.03G.

If the staff's written findings indicate that there is probable cause for believing that a discriminatory act within the scope of Article 49B has been committed, the Commission staff, the complainant, and the respondent are required to enter into a process of conciliation in order to attempt to achieve a just resolution of the discriminatory practice. Art. 49B, § 10(b); COMAR 14.03.01.07A. If no agreement can be reached, the Executive Director or deputy director may terminate the efforts to conciliate the dispute and certify the case for public hearing. COMAR 14.03.01.07B. Thereafter, the Executive Director forwards the certified case to the Commission's general counsel for further processing. COMAR 14.03.01.08A(2). Upon reviewing the file, the general counsel either remands the case to the Executive Director or designee for further

investigative proceedings, or prepares the case for public hearing. COMAR 14.03.01.08A(3).

In preparing the case for hearing, the Commission's general counsel formulates a written statement of charges in support of the complaint. The statement of charges is then forwarded to a Commission-appointed hearing examiner (currently an ALJ of the Office of Administrative Hearings) [3] together with a request for a hearing date. COMAR 14.03.01.08B(1). After considering all of the evidence, the ALJ issues a written provisional order that chronicles the facts upon which it is based, resolves all disputed issues of material fact, and states his or her conclusions of law. COMAR 14.03.01.09H. The provisional order also sets forth the appropriate relief to be granted in the event of a finding that the respondent has engaged in an unlawful discriminatory act. *Id.;* Art. 49B, § 11(e). If no discriminatory act is found, the ALJ states his or her findings of fact and issues an order dismissing the complaint. Art. 49B, § 11(g); COMAR 14.03.01.09H(3).

Either the Commission staff, the respondent, or the complainant may note an appeal from the provisional order to an appeal board of the Commission. COMAR 14.03.01.10A(1). It is this right of further administrative appeal that makes the ALJ's decision provisional. If no timely appeal is taken, the ALJ's decision becomes the final decision of the Commission. COMAR 14.03.01.09H(5). If an appeal to an appeal board is noted, the status of the ALJ's decision is subject to the outcome of that appeal.

The chairperson of the Commission appoints an appeal board of three commissioners who decide the appeal. CO-

---

3. At the time Tucker's discrimination case was certified, the Rules of Procedure of the Commission on Human Relations provided for a hearing examiner, appointed by the Commission pursuant to Art. 49B, § 1(b), to conduct the initial hearing in a contested case. The Commission subsequently amended its procedural rules pursuant to Md.Code Ann., State Gov't § 10–207 (1993 Repl.Vol.) to delegate to the Office of Administrative Hearings ("OAH") the responsibility for conducting such a hearing. *See* COMAR 14.03.01.08(B)(1) (1994); *see also Kohli v. LOOC, Inc.,* 103 Md.App. 694, 711–13, 654 A.2d 922 (1995).

MAR 14.03.01.10D; Art. 49B, § 3(d). The board determines whether it wishes to hear oral argument. After considering the evidence that was before the ALJ, the board may affirm, reverse, or modify the provisional order in accordance with the standards set forth in the Commission's rules of procedure. COMAR 14.03.01.10F(1); *see also Kohli v. LOOC, Inc.*, 103 Md.App. 694, 654 A.2d 922 (1995). The board then issues the final decision and order of the Commission. When applicable, all parties to the case are served with a notice of the right to apply for judicial review of the final order under the appropriate provisions of the Maryland Administrative Procedures Act ("APA"). COMAR 14.03.01.10F(4).

Maryland Code Ann., State Gov't § 10–222 (Supp.1994) of the APA governs all actions for judicial review of administrative agency decisions filed on or after 1 June 1993.[4] A party to a contested case who is aggrieved by the final decision of the agency is entitled to seek judicial review of the decision as provided in that section. Section 10–222 specifically provides that an agency is permitted to seek judicial review of a decision if the agency was a party to the proceedings before the agency. § 10–222(a)(2). In a proceeding for judicial review pursuant to § 10–222, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

---

4. *See* chapter 59, section 5 of the Acts of 1993.

(vi) is arbitrary or capricious.
Section 10–222(h).

## FACTS

On 22 February 1990, James F. Tucker applied for the position of Firefighter II with the Anne Arundel County Fire Department. Firefighter II is an entry level position that entails several emergency services responsibilities, including extinguishing fires, operating fire and rescue equipment, and rendering emergency medical care to sick and injured persons. The Anne Arundel County selection process for this position required Tucker to submit to a written and oral evaluation, a preliminary physical and medical screening, a physical and medical examination, a background investigation, and a final selection review.

Upon successfully completing the written examination and oral interview, Tucker was placed in the "most qualified group for further processing." He was therefore permitted to proceed with the next phase, involving the preliminary medical screening, which he completed on 16 May 1990 at the Chesapeake Medical Center. In part, the screening involved the administration of the Ishihara Plate Test, a commonly used vision screening examination that consists of a series of printed plates of different colored dots patterned in the shape of numbers. Tucker, who was employed as a tractor-trailer driver, had been tested for color vision on three previous occasions as part of physical examinations mandated by the United States Department of Transportation because of his employment. Although he had passed each of those prior visual examinations, Tucker failed the Ishihara test. As a result, he was referred to the Wilmer Eye Institute of the Johns Hopkins University School of Medicine. There, Tucker was administered the Anamoloscope Plate Test ("APT"), which differentiates between persons whose color vision is classified as "anomalous trichromacy" (a disorder in which an individual discriminates colors using the red, blue, and green primary colors of normal vision, but is less able to discriminate shades of colors than a normal observer) and those with

"dichromacy" (a vision deficiency in which the cone receptors in an individual's eyes are effectively missing one of the three normal color pigments). Tucker was diagnosed on 30 May 1990 as a dichromat of the deuteranopic type, indicating that he was missing the gene for green pigment absorption in the cone receptors in the eye, and therefore uses only two primary colors (instead of the normal three) to make all color matches. Depending upon the field conditions, deuteranopes experience varying degrees of difficulty distinguishing shades of red and green.

The medical standards developed by Anne Arundel County for public safety positions (which include firefighters) provide that applicants with color vision deficiencies are acceptable, depending on the nature and severity of the condition and the job to be performed. Although no diagnostic specifications were made applicable to firefighters, the County has applied the standards to exclude all persons diagnosed as "dichromats" from entry-level uniformed positions within the fire department. Persons diagnosed with "anomalous trichromacy," however, are considered "acceptable." After receiving the results of Tucker's vision tests, the County consulted with its physicians. Based upon Tucker's diagnosis following the administration of APT, the County excluded him from further processing for the Firefighter II position.

Thereafter, on 4 October 1990, Tucker filed a verified complaint with the Commission, alleging that the Anne Arundel County Fire Department had discriminated against him on the basis of his "physical handicap, partial color blindness to shades of green." In his complaint, Tucker indicated that he had five years of volunteer firefighting experience, that his then current occupation as a truck driver required reading color coding, that he had passed the motor vehicle test to drive a tractor-trailer, and that he had no trouble reading traffic signals. Tucker further revealed that he had been unaware of his condition until he was diagnosed as a deuteranopic dichromat as a result of the required preliminary medical screening for the County position.

The Commission staff conducted an investigation and on 25 April 1991 issued a written finding of probable cause for believing that the Fire Department had unlawfully discriminated against Tucker in violation of Article 49B of the Annotated Code of Maryland. Efforts to resolve the alleged discrimination through conciliation failed, and on 6 March 1992, the case was certified for public hearing.

On 9 June 1992, the Office of General Counsel for the Commission filed a statement of charges, on behalf of Tucker, with the Maryland Office of Administrative Hearings. The charges alleged that the Anne Arundel County Fire Department and County Personnel Office had engaged in unlawful discrimination by their "failure to hire [Tucker] because of his actual or perceived visual impairment, color blindness, where such impairment does not reasonably preclude the performance of the position of firefighter." Public evidentiary hearings on the matter were conducted before an ALJ on 14–15 and 17–18 December 1992. In his provisional opinion and order issued on 29 June 1993, the ALJ found that Tucker had no limitation of any kind on his major life activities, that he had been hired for every job for which he had applied, and that neither he nor anyone around him had known of his vision condition prior to his physical pre-screening for the Firefighter II position. The ALJ concluded that Tucker was neither a handicapped person within the meaning of Article 49B, nor was perceived as having a handicap within the expanded definition set forth in COMAR 14.03.02.03,[5] and that he there-

---

5. Under Article 49B, § 15(g), a person who possesses "any degree of ... visual impairment" which is caused by a "birth defect" meets the definition of a handicapped individual. The definition is more fully explained in Md.Regs.Code, tit. XIV § 03.02.03, which provides that a handicapped individual is one who:

Has a physical, mental or emotional handicap as defined above; and whose condition is demonstrable by medically accepted clinical or diagnostic techniques, *and which constitutes or is regarded as constituting a substantial limitation on one or more of a person's major life activities.* Major life activities may be considered to include ... employment ...

(Emphasis supplied). The COMAR definition has been accepted as a valid amplification of the Article 49B definition. *See, e.g., Mass Transit*

fore was not entitled to relief on a claim of employment discrimination. Accordingly, the ALJ ordered that Tucker's complaint be dismissed.

On 9 July 1993, the General Counsel of the Commission appealed the ALJ's decision to an appeal board of the Commission. The appeal was specifically directed at the ALJ's failure to find that Anne Arundel County *regarded* Tucker as handicapped. In claiming that the ALJ's conclusion was both based upon the incorrect legal standard and was unsupported by substantial evidence, the Commission staff contended that Tucker was perceived by the County as having a condition that constitutes a substantial limitation on one or more of his major life activities, and therefore met the COMAR definition of a handicapped individual.

An appeal board of three commissioners, designated by the chairperson of the Commission, held a hearing on 14 December 1993 at which an Assistant General Counsel for the Commission appeared on behalf of Tucker and the Commission staff and an Assistant County Attorney represented the County. On 23 February 1994, the Board issued the final decision and order of the Commission in which it concluded that the evidence did not demonstrate that the County had perceived Tucker as having a substantial limitation in employability. Reasoning that the testimony showed merely that the County considered Tucker to be unsuited for the particular position for which he had applied, the Board determined that Tucker and the Commission staff had not met the burden of proving by a preponderance of the evidence that the County's failure to hire Tucker constituted unlawful employment discrimination. It therefore affirmed the ALJ's decision in its entirety and dismissed Tucker's complaint. No further administrative appeal from the Board's decision is provided by statute or regulation.

---

Admin. v. Maryland Commission on Human Relations, 68 Md.App. 703, 710–11, 515 A.2d 781 (1986).

Apparently unsatisfied with the decision of the Board, the Executive Director of the Commission, in concert with the General Counsel to the Commission, authorized the filing of a petition for judicial review of the Board's decision.[6] The petition was filed on behalf of the Commission, by and through its General Counsel, on 28 March 1994 in the Circuit Court for Anne Arundel County. Tucker, although notified of the Commission's appeal, did not appeal separately, nor did he participate in the proceedings in the circuit court. After considering the arguments of counsel and the evidence adduced at the administrative hearings, the circuit court determined that the Board's decision was based upon a correct interpretation of the law and supported by substantial evidence. Consequently, that court, in a 6 September 1994 order, affirmed the Board's decision and denied all relief requested by the Commission staff on behalf of Tucker. The circuit court did not decide, and the parties did not raise, any question of standing to maintain the judicial review proceedings. This timely appeal followed. Again, Tucker did not join in this appeal, nor did he participate in any of its proceedings.

## DISCUSSION

### I.

The Office of the General Counsel for the Maryland Commission on Human Relations asks us to address three questions concerning legal errors allegedly made by the ALJ and the Board. We perceive, however, a threshold issue in this case, not raised by either party, as to whether the agents of the Commission who authorized and sought judicial review of the Board's order had the authority to do so on behalf of the Commission.

■ Ordinarily, an appellate court will consider only an issue that is properly raised in or decided by the court below,

---

6. As discussed more fully *infra,* we were advised at oral argument by counsel for the Commission as to which individuals within the Commission staff had sanctioned the application for judicial review.

unless the question involves the jurisdiction of the appellate court to hear the matter. *County Council of Prince George's County v. Offen*, 334 Md. 499, 508, 639 A.2d 1070 (1994); *Moats v. City of Hagerstown*, 324 Md. 519, 524–25, 597 A.2d 972 (1991). Under certain circumstances, however, our cases have recognized that an appellate court possesses discretion to consider questions that were neither decided by the trial judge nor raised by the parties. *See Offen, supra, id.* and the cases cited therein. The Court of Appeals has indicated that, "because of important public policy considerations, there is a limited category of issues, in addition to jurisdiction, which an appellate court will address even thought they were not raised by a party." *Id.* 334 Md. at 509, 639 A.2d 1070 (quoting *Moats, supra,* 324 Md. at 525, 597 A.2d 972).

Maryland appellate cases have discussed two views as to the raising of standing issues on appeal. In *Joseph H. Munson Co. v. Secretary of State*, 294 Md. 160, 448 A.2d 935 (1982), *aff'd, Secretary of State v. Joseph H. Munson Co.* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), the Court recognized conflicting case law concerning review of a party's standing absent proper preservation of the issue. In that case, the appellee attempted to raise on appeal the issue of standing without having taken a cross-appeal. In its analysis, the Court acknowledged that several Maryland cases "take the position that, if the plaintiff's alleged lack of standing is not properly raised by the defendant, an appellate court will not consider the matter." *Id.* 294 Md. at 169, 448 A.2d 935. It proceeded to examine both prior Maryland decisions in which the appellate court would not consider the question of lack of standing where the issue had not been properly raised by a defendant below, and cases suggesting that the standing of a party to maintain an action is an issue that an appellate court will address on its own motion. *Id.* at 169–70, 448 A.2d 935. The rationale for the latter view, the Court reasoned, was "that, if a plaintiff lacks standing, there may be no 'interested parties' asserting adverse claims, and thus there may be no 'justiciable controversy,' which is a matter regularly noticed by appellate courts sua sponte." *id.* at 170, 448 A.2d 935; *see also*

*Reyes v. Prince George's County,* 281 Md. 279, 288, 380 A.2d 12 (1977); *Harford County v. Schultz,* 280 Md. 77, 371 A.2d 428 (1977). The *Munson* Court, recognizing that resolution of whether the standing issue was properly before the Court would not alter the result in the case before it, did not resolve whether a conflict existed among the cases concerning the raising of the issue of standing on appeal and, if such a conflict existed, how it should be resolved.

In *Maryland Department of Public Safety and Correctional Services v. Bailey,* 95 Md.App. 12, 619 A.2d 176 (1993), *rev'd on other grounds,* 333 Md. 397, 635 A.2d 432 (1994), we had occasion to consider whether the issue of standing was properly before us on appeal although it had not been raised in the circuit court. In *Bailey,* a supervisory employee of the Maryland Division of Corrections filed a grievance petition pursuant to the Maryland State Employee Grievance Procedures claiming that he had been improperly prohibited from representing State employees in grievance proceedings. The Department of Public Safety and Correctional Services ("Department") prevailed on the issue of standing at the hearing before the agency. In the employee's appeal of the decision of the agency, the circuit court reversed on the ground that the order below was premised upon an erroneous conclusion of law. When the Department appealed to this Court, the employee contended at oral argument that the issue of standing had not been raised in the circuit court and was therefore not preserved for our review. In deciding that the issue of standing was properly before us under those circumstances, we interpreted the discussion in *Munson* as follows:

> In any event, the view first stated in *Munson* that opines that standing cannot be raised for the first time on appeal, to the extent it is not dicta, as we read it, applies only when an *appellee* attempts to raise such an issue. Even then, it is based on the theory that an appellee who does not file a timely appeal may not thereafter insert an issue not raised in the appellant's brief (citation omitted).

*Bailey, supra,* 95 Md.App. at 26–27, 619 A.2d 176 (emphasis in original). Thus, in *Bailey,* we construed the cases declining to address the question of standing when it was raised for the

first time on appeal as a limitation solely upon an appellee seeking to secure review of the issue. Although, on certiorari, the Court of Appeals reached a result contrary to our own on the merits of the case, the Court concurred in our conclusion that the issue of standing was properly before us. *Bailey,* 333 Md. at 403–04, 635 A.2d 432. Our reasoning in *Bailey* thus appears to support the view that the Court in *Munson* did not seek to preclude a court's ability to raise the question of standing *sua sponte.*

More recently, in *Sipes v. Board of Municipal and Zoning Appeals,* 99 Md.App. 78, 635 A.2d 86 (1994), several environmental organizations appealed a decision by the Board of Municipal and Zoning Appeals of Baltimore City ("Board") that had approved a salvage company's application for a conditional use of a junk yard. The salvage company moved to dismiss on the grounds that the environmental organizations lacked standing to appeal. The circuit court, declining to rule on that motion because it had in the interim permitted an otherwise aggrieved party to intervene, ultimately affirmed the Board's action. On appeal to this Court, the appellee Board, without noting a cross-appeal, attempted to challenge the circuit court's refusal to dismiss the appeal on the issue of standing. Confronted squarely with the issue that the Court of Appeals had not been obligated to resolve in *Munson,* we held that the appellees' failure to note a cross-appeal from the circuit court judgment did not preclude our consideration of the issue of standing. In reaching our decision, we found the second line of cases discussed in *Munson,* permitting the appellate court to raise the issue of standing *sua sponte,* to be persuasive. In reasoning that the failure of a party to file a notice of cross-appeal does not prevent an appellate court from considering whether it has jurisdiction over the case, we concluded that the absence of a cross-appeal likewise should not prevent us from deciding the issue of standing.

■ Although *Sipes* and *Bailey* both involved circumstances in which one of the parties to the action sought to raise the question of standing at some stage in the overall

proceedings, we decided in *Sipes* that the better view permits us to consider the issue on our own motion, regardless of the absence of the parties' initiative on that score. In adopting the rationale of the second category of cases discussed in *Munson*, we explained that "although the issue of standing may not be jurisdictional in nature, it does go to the very heart of whether the controversy before the court is justiciable. If the controversy is nonjusticiable, it should not be before the court, and therefore must be dismissed." *Sipes, supra,* 99 Md.App. at 87–88, 635 A.2d 86 (citations omitted). In accordance with this reasoning, we consider the issue of standing as falling within the category of cases, in addition to jurisdiction, that an appellate court may address although it was not raised by a party. *See also Offen, supra,* 334 Md. at 509, 639 A.2d 1070 (suggesting that the standing of a party would fall within that limited category of issues that an appellate court might raise *sua sponte* ). In the case *sub judice,* we believe it appropriate to consider whether the Executive Director and General Counsel of the Commission, who authorized the appeal of the agency's final decision, possessed standing to seek judicial review of the Board's order.

## II.

■ Prior to 1993, Maryland jurisprudence had traditionally taken a narrow view regarding the capacity of an administrative agency to seek judicial review of its own decisions. The rule in *Zoning Appeals Board v. McKinney,* 174 Md. 551, 199 A. 540 (1938), which has been applied over the years, stated that an administrative agency exercising a quasi-judicial function usually is not entitled to appeal from a circuit court judgment reversing the agency's decision, absent specific statutory authority. *Id.* at 564, 199 A. 540; *see also Maryland Board of Pharmacy v. Peco, Inc.,* 234 Md. 200, 198 A.2d 273 (1964). The reasoning in *McKinney* was derived from the principle that an administrative agency has no interest in its decision different from that which a judicial or quasi-judicial tribunal would have—to decide cases that come before

it in a fair and impartial manner. *See McKinney, supra,* 174
Md. at 564, 199 A. 540. Just as a trial judge reversed by an
intermediate appellate court is not entitled to appeal that
decision to a higher court, an administrative agency that
operates in a quasi-judicial mode was said not to have an
interest in the outcome of the case. As enunciated by the
Court of Appeals in *Maryland Board of Registration v. Arma-
cost,* 286 Md. 353, 354–55, 407 A.2d 1148 (1979) (internal
citations omitted):

> Typically, administrative agencies perform quasi-judicial
> and quasi-legislative functions. Generally, an administra-
> tive agency acting in a quasi-judicial capacity cannot appeal
> when one of its decisions is reversed by a court of compe-
> tent jurisdiction unless the authority to appeal to a higher
> court is provided by law. When an administrative agency
> functions in this capacity, it is immaterial whether the issue
> involved relates to a matter of procedure or substance. In
> either event, absent statutory authority, it has no standing
> to appeal.

We further explained the precepts of *McKinney* and its
progeny in *Board of County Comm'rs v. H. Manny Holtz,
Inc.,* 60 Md.App. 133, 481 A.2d 513 (1984), where we reasoned:

> [T]he disqualification, or lack of standing [of the agency],
> arises ultimately from the proposition that the agency is not
> a party to the administrative proceeding before it. That is
> why it has no cognizable interest in the outcome of the
> proceeding; that is why it is not regarded as a proper party
> in the circuit court, even as a respondent/appellee; and that
> is why it has no authority to appeal from a judgment of the
> circuit court that reverses or modifies its administrative
> decision.

The principles espoused in *McKinney* and *Peco,* although
stated in the context of an agency's effort to overturn the
circuit court's reversal of its own decision, would thus appear
to apply with equal force under circumstances in which an
agency appears to seek a court reversal of its own final
decision. In both instances, it can be said that, absent statuto-
ry authority, an administrative agency that has itself supplied

the final decision of the agency is not an aggrieved party or a proper party on appeal.

By chapter 59 of the Acts of 1993, the General Assembly appeared to abrogate completely the *McKinney–Peco* doctrine with respect to state administrative agencies subject to the Administrative Procedures Act. *See Md. Racing Comm'n v. Castrenze*, 335 Md. 284, 295 n. 4, 643 A.2d 412 (1994). Maryland Code Ann., State Gov't § 10–222 (Supp.1994) specifically recognizes that administrative agencies that participate as parties in administrative proceedings may pursue judicial review of the agency's final decision. Section 10–222(a), which, as discussed *supra*, applies to all actions for judicial review filed on or after 1 June 1993, provides in pertinent part:

Review of final decision.—(1) ... a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section. (2) An agency, including an agency that has delegated a contested case to the Office [of Administrative Hearings], is entitled to judicial review of a decision as provided in this section if the agency was a party before the agency or the Office.

As the Commission in the instant case ostensibly filed its petition for judicial review of the Board's decision on 28 March 1994, the provisions of § 10–222 apply to the case *sub judice.*

■ We recognize that, where judicial review is provided by statute, the statutory method of review is exclusive and fetters a court in exercising its inherent powers in reviewing administrative agency decisions. *See Commission on Medical Discipline v. Stillman*, 291 Md. 390, 404–05, 435 A.2d 747 (1981). Under such circumstances, the statute defines the limits of a court's power to review the determinations of the agency. *id.; see also Lee v. Secretary of State and Mahoney*, 251 Md. 134, 139, 246 A.2d 562 (1968). Pursuant to its express terms, § 10–222 permits an *agency* to appeal from the final decision in a contested case. "Agency," as defined by § 10–201(b) of the APA, which was in effect at all times relevant to the

case sub judice,[7] *means:*

    (1) an officer or unit of the State government authorized by law to adjudicate contested cases; or

    (2) a unit that:

        (i) is created by general law;

        (ii) operates in at least 2 counties; and

        (iii) is authorized by law to adjudicate contested cases.

The Commission on Human Relations is established in Md. Ann.Code, Art. 49B, § 1. That section specifies that the Commission "consist[s] of nine members who shall be appointed by the Governor for a term of six years, by and with the advice and consent of the Senate." Article 49B vests in the Commission itself all responsibilities pertaining to the adjudication of contested cases. Pursuant to Article 49B, § 2(b), "the Commission shall appoint ... hearing examiners ... [to] conduct hearings, make findings of fact, and draw conclusions of law in discrimination cases assigned to the hearing examiner." In addition, § 3(d) provides that "the Commissioners ... shall serve as an appeal board for the review of decisions of the hearing examiner." Based upon the statutory framework that defines the duties and authority of the Commission, it is clear to us that the Commission, consisting of its nine members, constitutes the "agency" within the meaning of § 10–201 of the APA.

    ■ In the case *sub judice*, the petition for judicial review filed in the circuit court and the notice of appeal filed in this Court indicate that the Commission, by and through the agency's General Counsel and Assistant General Counsel, was the party that was seeking review of the ALJ's and the Board's decision. Nonetheless, it struck us as incongruous that the Commission would be appealing from its own final administrative decision, § 10–222(a) of the APA notwithstanding. Because neither the record nor the parties' briefs re-

---

**7.** The current definition of agency is codified in Md.Code Ann., State Gov't § 10–202 (Supp.1994). Pursuant to chapter 59, section 5 of the Acts of 1993, the provisions of § 10–202 were made applicable only to administrative proceedings commencing on or after 1 June 1993.

flected whether or why the Commissioners themselves had sanctioned seeking judicial review of the Board's decision, our Clerk's office telephonically advised counsel for the parties that the following questions would be propounded to them by the panel at oral argument:

1. Did the Commissioners of the Human Relations Commission specifically authorize seeking judicial review of the Appeal Board's decision in this case?

2. If authorization to seek review in this matter was not given by the Commissioners, who made the decision, on behalf of the Commission, to petition for such review?

In response to these queries, counsel for the Commission conceded at oral argument that the Executive Director of the Commission and the agency's General Counsel, and not the Commissioners, had made the decision to seek review of the Board's decision. The Commission's appellate counsel proffered to us that, at some unspecified time in the past, the Commissioners had delegated to the Executive Director and General Counsel the authority to determine whether to take an appeal of an appeal board's action.[8] Counsel conceded, however, that such delegation was merely an unmemorialized internal agency practice that had not been authorized by any

---

8. As indicated *supra,* the Executive Director of the Commission is appointed by the Governor from a list of five names submitted by the Commission, and "shall perform such duties as may be prescribed by the Commission." Md.Ann.Code of 1957, Art. 49B § 2(a). By statute, the Executive Director retains the authority to appoint General Counsel for the Commission. Art. 49B § 2(c)(1). Though solicited by us, appellant's counsel at oral argument was unable to identify in the minutes of the Commission's meetings or elsewhere where the delegation to the Executive Director and/or General Counsel of any authority to act as they did in this case (or any case) had been memorialized.

It appears clear to us that the legislature intended the Commission's General Counsel to act in a representative capacity and as a legal advisor to the Commissioners, sans any original authority save that conferred by statute or where lawfully delegated by the Commissioners. Art. 49B, § 2(c); 12(a). Consequently, the General Counsel is the attorney and the Commission, in the embodiment of the Commissioners, is the client. The Executive Director, on the other hand, is generally dependent on the Commissioners for a description of his or her duties. Art. 49B, § 2(a); *but see* § 10(a).

statute, COMAR rule, or, for that matter, any published rule or edict generally discoverable by the public. Apparently, it has merely been, at best, a policy of some duration within the institutional memory of at least some Commission staff that the Executive Director and General Counsel make the decision whether to seek judicial review in contested cases on an *ad hoc* basis.

We believe that, for a petition for judicial review by the Commission to be proper under § 10–222 of the APA, it must be approved by the appropriate individual or group of individuals comprising the agency, within whom is reposed the ultimate legal authority to pursue such review. Assuming, without deciding, that § 10–222 stands for the proposition that the Human Relations Commission can appeal from its own appeal board's decision, the authority to seek judicial review in a contested case rests with the nine Commissioners. Because the power to authorize judicial review rests exclusively in the "agency" by statute, the Commissioners themselves must sanction any determination to adjudicate a contested employment discrimination case beyond the decision of an appeal board of the Commission. As we have suggested in note 8, *supra,* the Commission and its General Counsel, for the purposes of this case, assume a relative posture analogous to that which exists between an attorney and client, whereby the General Counsel is the attorney and the Commission is the client. Under Maryland law, an attorney has no right on his own initiative to appeal from an order or judgment affecting the interests of his client. *Brantley v. Fallston Hospital,* 333 Md. 507, 512, 636 A.2d 444 (1994). Although an attorney must inform his or her client of the various legal avenues that are available to the client, the client must make the ultimate decision as to the end he or she seeks. *State v. McKenzie,* 17 Md.App. 563, 588, 303 A.2d 406 (1973); *see also Brantley, supra,* 333 Md. 507, 636 A.2d 444 (attorney's authority to file an appeal terminated upon the death of his client); *Bosley v. Dorsey,* 191 Md. 229, 60 A.2d 691 (1948) (superseded by statute as stated in *Public Service Comm'n v. Maryland People's Counsel,* 309 Md. 1, 522 A.2d 369 (1987)) (People's

Counsel, a creature of statute that was merely acting in its legislatively-created capacity to appear on behalf of the public, was not a party in interest in the subject matter of the suit such that it could prosecute appeal from an order of the Public Service Commission of Maryland). As it has not been demonstrated in this case that the Commissioners authorized judicial review before it was initiated,[9] or that such decision-making

---

**9.** Though the Commission has not explicitly argued that, assuming that the Commissioners did not specifically authorize the Executive Director and General Counsel to file the petition for judicial review that was filed in this case, the Commission Chairperson's 29 April 1994 execution of the notice to the parties required by Rule 7–202(d)(2) is the equivalent of a ratification by the "agency" after the fact, it may be inferred from appellant's counsel's submission in response to our 5 May 1995 order that appellant is relying on that notice to demonstrate that judicial review was sought with the Commission's authority. For such an argument, however, to be worthy of substantive analysis, the record would need to disclose, at a minimum, that the execution of the Rule 7–202(d)(2) notice by the Commission Chairperson came within the time during which a petition for judicial review could have been filed had the Commissioners themselves actually acted to authorize the seeking of such relief. *See* Md.Rule 7–203 (requiring a petition for judicial review to be filed within thirty days after the date the agency sent notice of the order to the petitioner where the sending of such notice is required by law); *see also Switkes v. McShain,* 202 Md. 340, 96 A.2d 617 (1953) (substitution of a proper appellant in an appeal originally taken by an improper party could not be considered a ratification of the original appeal, where the proper appellant did not enter the action within the time prescribed by law for noting the appeal); *Sipes v. Board of Municipal and Zoning Appeals, supra,* 99 Md.App. at 98, 635 A.2d 86 (motion to intervene on appeal in an action in which none of the original parties had standing to take the appeal was untimely where period for appealing the decision had already expired).

This record does not disclose whether the Board's decision was served on the parties, as required by COMAR 14.03.01.10F, on or after the date the decision was rendered on 23 February 1994. If such service, i.e. mailing or hand delivery, were effective as of 23 February 1994, the time for filing a petition for judicial review would have expired on 25 March 1994, prior to the 29 April 1994 certification by the Chairperson of the transmittal of the Rule 7–202(d)(2) notice. By the same token, because the record is silent as to a latter date of service of the Board's decision, appellant is unable to demonstrate that the Rule 7–202(d)(2) notice was executed within the thirty day appeal period. Even were that possible, the further question of whether the Chairperson was properly empowered to act on the Commissioners' behalf in determining whether to initiate or perpetuate judicial review proceedings goes unanswered on this record.

authority was properly delegated to the Commission's Executive Director and General Counsel,[10] it therefore follows that the circuit court lacked the authority to entertain this appeal.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED; CASE REMANDED WITH DIRECTIONS THAT THE PETITION FOR JUDICIAL REVIEW BE DISMISSED; COSTS TO BE PAID BY APPELLANT.

---

**10.** On the record of this case, we do not decide whether such a delegation, if proven, would have been proper.